JOS. T. SHEDLOCK *v.* J. NORMAN MARSHALL t/a MARSHALL'S EXPRESS CO.

SAME *v.* J. NORMAN MARSHALL, INDIV. AND t/a MARSHALL'S EXPRESS.

LEE A. MILLER *v.* J. NORMAN MARSHALL, t/a MARSHALL'S CO. ET AL.

JOS. T. SHEDLOCK *v.* LEE A. MILLER, ET AL.

[No. 101-104, October Term, 1945.]

*Decided March 15, 1946.*

The causes were argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Sigmund Levin* and *Paul Berman* for Joseph T. Shed-
lock.

*Benjamin Swogell,* with whom were *Avrum K. Rifman*
and *Theodore B. Berman* on the brief, for Lee A. Miller,
in Nos. 101, 102 and 104, and *Jacob Blum* on the brief
for Lee A. Miller in No. 103.

*Palmer R. Nickerson* and *W. Hamilton Whiteford* for
Marshall's Express and J. Norman Marshall.

MARBURY, C. J., delivered the opinion of the Court.

On April 20, 1944, about 7 A. M., Joseph T. Shedlock
was on his way from Baltimore to Sparrows Point, driv-
ing his own automobile in which was a passenger, Lee A.
Miller, who was associated with him in his work. He
proceeded along Monument Street, a public highway in
the City of Baltimore, and entered the intersection of that
street with the Philadelphia Road, which was a duly
marked and established boulevard or arterial highway.
Monument Street enters the Philadelphia Road at an
acute angle, and Shedlock was driving southeast on Mon-
ument Street and intended to go east on the Philadelphia

Road. While he was in the intersection, a tractor-trailer combination, belonging to J. Norman Marshall, trading as Marshall's Express Company, and driven by the latter's employee, and traveling west on Philadelphia Road, entered the intersection, and there was a collision between the two. The point of impact, which was agreed upon by all parties, was 28 feet 8 inches north of the south curve of the Philadelphia Road, about 124 feet east of the int where the rounded curb on the southwest side of Monument Street meets the north curb of the Philadelphia Road, and about 125 feet west of the overhead railroad bridge over the Philadelphia Road. The paved surface of the roadway, across the intersection, at the point of impact, is 61 feet 4 inches. The Philadelphia Road, west the intersection, is 48 feet 4 inches wide, and east of the intersection, where it goes under the railroad bridge, is 34 feet 9 inches. As a result of the collision, Shedlock and Miller were badly injured, Shedlock's automobile was wrecked, and the tractor-trailer was upset and badly damaged.

On October 5, 1944, Shedlock brought suit against Marshall in the Baltimore City Court, for personal injuries and property damage. On October 16, 1944 Marshall brought suit against Shedlock in the Baltimore City Court for damages to the tractor-trailer. On November 8, 1944, Miller brought suit against Marshall in the Superior Court of Baltimore City for personal injuries. Marshall, after leave granted, filed a third party complaint in this last suit against Shedlock as third party defendant under the provision of the Joint Tortfeasors Act, Flack's Annotated Code, 1943 Supplement, Article 50, Sec. 27 (a). Miller, the original plaintiff, did not amend his pleadings to assert the claim against Shedlock as required by the statute, but his failure to do this cannot prejudice Marshall's right to have Shedlock brought in. No question of Miller's failure to declare against Shedlock was raised by anyone, and, as the parties all went to

trial on the pleadings as filed, any defects, in this respect, were waived.

General issue pleas were filed, in all these cases by all the parties defendant, and on May 14, 1945, Marshall filed his petition in the Baltimore City Court asking that the two cases pending therein, and the Superior Court case be consolidated for trial in pursuance to Rule 2, Section III, title "Trials" of Part Three of the General Rules of Practice and Procedure. After an order *nisi* had been passed, and after the hearing of objections made by Shedlock and Miller, it was ordered by the Court on May 18, 1945, that there should be a joint hearing on all the matters in issue in all the three cases. As the objections pressed here, if well founded, would render nugatory and void all the subsequent proceedings, they will be considered first.

It is contended by Shedlock and Miller that the Court had no authority to order a joint trial of cases originating in the Baltimore City Court, and in the Superior Court, as each of these courts has concurrent jurisdiction in civil common law cases such as those consolidated. Article 4, Part IV, Secs. 27 and 28 of the Constitution are cited as authority for the contention that the provisions of Rule 2 of this Court and their application in the present case are unconstitutional. Rule 2, as adopted by this Court on January 30, 1941, provides that when actions involving a common question of law or fact or a common subject matter are pending before several of the courts of law of Baltimore City, any of such courts in Baltimore City may order a joint hearing or trial of any or all of the matters of issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings there in as may tend to avoid unnecessary costs and delay. This rule in common with the other rules, similarly adopted, was authorized by Chapter 719 of the Acts of 1939, and was passed after it had been recommended by a committee appointed by the Court in pursuance of Section 35D of Article 26 of the Code as amended by the Act of 1939. The rules thus adopted were reported to the

General Assembly of 1941 as provided by the Act of 1939, and not having been modified or repealed by it, they took effect on September 1, 1941. Ever since that time they have been in effect, and operative.

Chapter 719 of the Acts of 1939, under which the rule was passed, while providing that rules passed under its authority, shall neither abridge, enlarge nor modify the substantive rights of any litigant, states also that the terms "practice and procedure" shall be liberally construed and shall be deemed to include, among other things, trials and judgments. The Superior Court case was not moved to the Baltimore City Court, nor were the Baltimore City Court cases moved to the Superior Court. A joint trial was had before a judge who was authorized to sit in both courts, and did so sit, concurrently, and before a jury which according to the record was sworn in both courts, and which rendered separate verdicts in each case in the respective courts, as will be hereinafter shown. Under these circumstances no substantive rights of any of the parties in any of the cases were adversely affected, nor was there any violation of any of the provisions of the Constitution. Since the adoption of the amendment of November, 1944, adding Section 18A to Article 4, the Constitution itself contains a specific direction to this court to regulate practice and procedure in the trial courts throughout the State. Rule 2 is such a regulation, and has been continued unchanged.

During the course of the testimony a witness for Marshall, upon his return to the witness stand after recess, was asked by counsel for Shedlock, upon cross examination, with whom he had discussed the case during the intermission. Counsel for Marshall thereupon said "You saw him talking with me on the steps." And the witness said "I wasn't talking about this accident." He was then asked "What were you talking about?" The Court refused to require him to answer this question over objection. While counsel should avoid talking to his witness while he is still on the stand, even though it is during the luncheon recess, and the conversation is not about the case,

nevertheless, we do not think it is within the rights of counsel for the other side to find out what the conversation was about. He had the right to inquire whether he was talking about the case or any phase of it, but not to ask the general question he did. It is unfortunate that such instances should occur because, they lead to suspicion which is often wholly unjustified, but we do not feel that any error was committed by the Court in its ruling on the question.

The Court, when it directed the joint trial of the cases, applied the authority given by Rule 2 to regulate the proceedings by ordering that the arguments at the conclusion of the case should follow the order in which the cases were filed in Court. As a result of this, Shedlock's counsel made the first argument, Marshall's the second, and Miller's the third. Then Shedlock's counsel was given only five minutes for rebuttal, while he was allowed 30 minutes for his first closing argument. This is within the discretion of the trial court and his exercise of such discretion will not be disturbed, unless it is plainly arbitrary, and unless some injury is shown to have been done to the complaining party. Where cases are consolidated it is impossible to follow the usual rules as to opening and closing, and, therefore, the trial judge has to make new ones for each case. We are unable to see that he committed any error in this respect in the cases before us.

At the conclusion of the trial the jury brought in four separate verdicts. The first was a verdict in the Baltimore City Court in the case of Shedlock v. Marshall. This verdict was for the defendant, Marshall, and from the judgment entered on it for Marshall for costs, Shedlock appealed. This appeal constitutes No. 101 in this Court. The second verdict was also in the Baltimore City Court in the case of Marshall v. Shedlock and was in favor of Marshall for $1,492. From the judgment on this verdict Shedlock also appealed, and this appeal is No. 102 here. The third verdict was in the Superior Court of Baltimore City, in the case of Miller v. Marshall, and was in favor of Marshall. From the judgment on that verdict for Mar-

shall for costs, Miller appealed, and that appeal is No. 103 here. The fourth verdict was in the same case, in favor of Miller against the third party defendant Shedlock, for $1,000, and, from the judgment on that verdict, Shedlock appealed, this appeal being No. 104 here.

We have already discussed the preliminary questions involved in the consolidation, and the one ruling on evidence, which was objected to. The other rulings objected to are on the prayers granted and refused by the Court. Some of these prayers were offered generally, but Marshall designated his prayers for the particular case in which they were offered. It may be assumed that by so doing he avoided any confusion of the jury except that possibly incident to the trial of four cases at one time. Such possible confusion, however, is overweighed, in the opinion of most courts by the advantage of having all questions relating to a single transaction disposed of in one case at one time, with the consequent saving of time of the court and of the witnesses, and the saving of the expenses of litigants. It does not appear that any misunderstanding occurred in the present case by reason of the fact that different prayers were offered in different cases.

Before discussing the questions involving the prayers, the facts should be stated in more detail. As we have previously said, there is no dispute on the exact location of the point of contact, but there is a very wide difference in the stories of the respective actors and their witnesses as to how the vehicles arrived at this point. Shedlock and Miller state that Shedlock's car was driven around the curb at the west end of the intersection of the two streets, stopped before it reached the line of the Philadelphia Road, and waited five or six minutes for traffic to go by, so that it could safely proceed. Shedlock then drove into what he claims was the line of the Philadelphia Road, and proceeded to about the point of contact, when Marshall's truck came out from a fog bank in the tunnel under the bridge, running on the wrong side of the road and proceeding very fast. Shedlock said he had only time to turn his car a little to try to run over the curb before

Marshall hit him on the left side. It might here be noted that while Shedlock claims he was running in the Philadelphia Road, he was at least four feet four inches over on the wrong side of that road, as extended from its curb lines before it entered the intersection from the west, so that he had not yet gotten to the right hand side of the Philadelphia Road. The testimony of Marshall's driver and of the driver of another truck which was following him, was that Shedlock's car came straight down Monument Street and slowed at the intersection, but did not stop. Marshall's driver saw it from 250 to 300 feet away, but not thinking that it was going to attempt to cross, he continued at the same speed he was going, which he estimated at about 25 miles an hour. Shedlock, he says, suddenly drove in front of him, and in trying to get around him, struck the left front of his tractor which broke his braking apparatus and pulled him around in such a way that he was unable to guide his tractor, and he went over the south curb of the Philadelphia Road and turned over. Shedlock's car also went over the curb, but remained upright.

The ruling of the trial court on the prayers which we are first urged to reverse is the granting of Marshall's 3rd prayer offered in the case of Shedlock v. Marshall. This prayer involves the duties and responsibilities of drivers entering a favored highway. Before considering it, a review of the appropriate statutes will be made.

Flack's Annotated Code, 1943 Supp., Art. 66½, Sec. 187, provides (a) "The State Roads Commission with reference to State and county highways, and local authorities with reference to other highways under their jurisdiction may designate through highways and erect stop signs at specified entrances thereto * * *," and (c) "Every driver of a vehicle shall come to a full stop at such sign or at a clearly marked stop line before entering an intersection and yield the right of way to vehicles approaching on the intersecting highway except when directed to proceed by a peace officer or traffic control signal."

Sec. 178 provides (a) "The driver of a vehicle shall come to a full stop as required by this Article at the entrance to a through highway and shall yield the right of way to other vehicles approaching on said through highway."

Sec. 2, Subsec. (20) defines intersection as follows: "The area embraced within the prolongation or connection of the lateral curb lines, or if none, the lateral boundary lines of the roadways of two highways which join one another at, or approximately at right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict."

Sec. 2, Subsec. (59) defines through highways as "Every highway or portion thereof at the entrances to which vehicular traffic from intersecting highways is required to stop and yield right of way before entering or crossing the same and when stop signs are erected as provided in this Article."

The accident in the case before us was at the intersection of the Philadelphia Road, a through highway established under the provisions of the statute, and Monument Street, which intersected it at an acute angle. The intersection of these two streets is therefore not that area embraced within lateral boundary lines of the roadways of the two highways, because that definition applies only to highways which join at, or approximately at, right angles. The intersection in the case before us is that loosely defined at the end of Subsection (20) as "the area within which vehicles traveling upon different highways joining at any other angle" (than a right angle) "may come in conflict."

The provisions of the Maryland statute are practically the same as the Uniform Act Regulating Traffic on Highways. See 11 *U. L. A.*, page 46, Paragraph 48. The Uniform Act provides for the erection of stop signs and states that when ever such signs have been erected, it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto, except where directed to proceed by an officer or by a traffic control signal. The defintion of in-

tersection in the Uniform Act is different. The term "intersection" as used in the uniform Act is the same, no matter at what angle the highways join or cross each other. In all cases, the intersection is the area within the prolongation or connection of the lateral curb lines or, if none, then of the lateral boundary lines. The provision in the Maryland Act, making a special definition for the intersection of highways which join at an angle other than a right angle is not found in the Uniform Act. It appears from this circumstance that the Maryland legislature intended to make a clear distinction between right angle intersections and intersections occurring from roads meeting at other angles.

The provisions of Art. 66½, Sec. 187, were first placed in the statute law of this State by the Act of 1929, Chap. 224, codified in Flack's 1935 Supp. to the Annotated Code, Art. 56, Sec. 209. Similar provisions were continued in 1939, Chapters 377 and 382 of the Acts of that year, codified in Flack's Annotated Code of 1939, Art. 56, Sec. 235. The present provisions were enacted in the form in which we have quoted them by the Act of 1943, Chap. 1007. The definition of intersection, which must now be read in connection with the other section, and which is contained, as we have shown, in Art. 66½, Sec. 2, Subsec. 20, was first enacted in 1943 by Chap. 1007 and became effective on June 1, 1943. All of the cases in this Court which have considered the duty of vehicles entering a favored highway from an unfavored highway were decided prior to the provisions of this statute defining intersection.

In the case of Shedlock v. Marshall, No. 101 here, the court granted the defendant's third prayer which quoted the statutory definition of intersection and told the jury that if they should find that the location of the accident "is within the area within which vehicles traveling upon Philadelphia Road and Monument Street, in the direction in which the respective automobiles are being driven, may come in conflict with one another," then "it became the duty of the plaintiff to yield the right-of-way to the auto-

mobile of the defendant traveling on the boulevard by permitting it to proceed without interruption and that this duty on the part of the plaintiff persisted throughout his passage across the favored way; and if the jury should find that the plaintiff failed in this duty, their verdict must be for the defendant."

This prayer is contrasted with defendant's prayer No. 4, granted in the case of Miller v. Marshall, which is No. 103 here. That was the passenger's case, and in that prayer, after reciting the duty of Shedlock to yield the right-of-way and continue to yield it throughout the area of the intersection, the jury was instructed that, if they found that Shedlock failed to yield the right-of-way, "and that said failure to yield the right-of-way was the proximate cause of the accident complained of," then their verdict should be for the defendant.

The case of Miller, the passenger, when tried, was against both Shedlock and Marshall, and the insertion of the proximate cause rule in that prayer was to relieve Marshall, in case the jury found that Shedlock's action was the proximate cause of the accident. In the third prayer in the other case, the question was not the negligence of either Shedlock or Marshall as affecting a third party, but was how Shedlock's negligence, if found, affected his suit against Marshall. Shedlock objects to this prayer because it states, in effect, that his failure to give the-right-of-way made him guilty of negligence, and bars him from a recovery. He claims that such negligence must, in addition, be found to be the proximate cause of the accident. The same question is raised by Marshall's Prayer E, filed in the case of Shedlock against Marshall (101 here). This is a contributory negligence prayer, decision on it was served, and as the jury found for Marshall in all of the cases, no appeal was taken by him. If, however, our conclusion should show that this prayer should have been granted, then, as the finding of the jury was what the prayer asked the court to direct the jury to find, the Shedlock cases against Marshall would be affirmed. *Texas Co. v. Washington B. & A. Electric R. Co.,*

147 Md. 167, 127 A. 752; *Cook v. Hollyday*, 185 Md. 656, 45 A. 2d. 761.

In the case of *Carlin v. Worthington*, 172 Md. 505, 508, 192 A. 356, 358, the plaintiff was on a boulevard, or favored highway, and the defendant was on an unfavored highway. The evidence whether defendant stopped before entering the intersection was conflicting. No demurrer prayer was submitted, but the plaintiff asked for an instruction that if the jury should find that defendant did not come to a full complete stop before entering the through highway, and it should find that the trucks collided in or near the intersection, then their verdict should be for the plaintiff unless plaintiff, by his negligence, directly contributed to the accident. Judge Sloan who wrote the opinion of the Court in that case, said "The weight of authority seems to be that the right of a driver on a favored highway is not absolute but is to be enjoyed with due regard to the circumstances then and there existing, particuarly as to speed and distances of the respective cars from the intersection when in sight of each other." Later in the opinion it is stated that the statutory duty of a driver on an unfavored highway, entering an intersection with a favored highway "is the application by statute of the old 'stop, look, and listen' rule with respect to railways," and *Philadelphia, W. & B. R. Co. v. Hoageland*, 66 Md. 149, 7 A. 105, 59 Am. Rep. 159, is quoted as giving the statement of that rule. The Court said that the vice of the plaintiff's prayer was that, in addition to the violation of the rule of the road at the intersection "it did not submit the question of the violation of the rule as the proximate cause of the accident."

In an earlier case, *Blinder v. Monaghan*, 171 Md. 77, 188 A. 31, 34, which was also a case occurring at the intersection of a boulevard and an unfavored highway, but in which a passenger traveling on the unfavored highway was plaintiff, this Court had said the manifest purpose of the boulevard statute "is to facilitate and expedite the movement of traffic within and between congested centers of population by setting aside selected high-

ways as through roads over which traffic may move without interruption or delay. To accomplish that it dispenses with the right-of-way rules applicable to highways generally, and gives the right of way to all traffic on such highways, * * *. Where as in this case the operator of a vehicle enters such a highway in disregard of these explicit and mandatory rules and collides with another vehicle approaching thereon, the collision can only be attributed to his negligence."

In *Carlin v. Worthington, supra,* the Court said that these quotations from the earlier case of Blinder v. Monaghan were "this court's expression of the meaning and effect of a 'stop' sign, on a secondary highway" but were not an instruction to a jury.

In the case of *Greenfeld v. Hook,* 177 Md. 116, 8 A. 2d 888, 892, 136 A. L. R. 1485, the opinion was written by Judge Offutt who had written the opinion in *Blinder v. Monaghan, supra,* and who had participated, without dissent, in the 'case of *Carlin v. Worthington, supra.* The Greenfeld-Hook case involved a collision at Lafayette Avenue and Eutaw Place in Baltimore City, in which the plantiff was driving on Lafayette Avenue, an unfavored street, and the defendant was on the favored street.

Without detailing the facts of that case, or the nature of the instructions considered, it is sufficient to say here that what the Court said it was considering was "the relative rights of travelers on a highway designated and appropriately marked by the proper authorities, as a 'boulevard,' 'stop street,' or 'arterial highway,' and of travelers entering such a highway from intersecting roads and streets, in the light of the statute as construed in two cases recently decided by this court"; that is, *Carlin v. Worthington, supra,* and *Blinder v. Monaghan, supra.* The Court discussed the two duties of stopping and of yielding the right-of-way and said that they were corelated and co-ordinated and that the safety of the traveling public demanded that the rules defining the relative rights of travelers be clear, unmistakable and definite. The Court discussed the two previous cases and other de-

cisions at some length and said finally: "Without further comment it is the opinion of this court that so much of Code (Supp. 1935), Art. 56, Sec. 209, as applies to the facts of this case is mandatory, that it is the positive and imperative duty of a person driving an automobile over an unfavored highway when he approaches an intersecting highway lawfully designated as a 'boulevard' or 'stop street,' to stop before entering the intersection, and having stopped, to exercise reasonable care and diligence to discover whether traffic thereon is approaching the intersection, and, having entered the intersection to yield the right-of-way to such traffic, by permitting it to proceed without interruption, and that that duty persists throughout his passage across the favored way."

In the case of *Pegelow v. Johnson*, 177 Md. 345, 9 A. 2d. 645, 648, heard in the same term as *Greenfeld v. Hook, supra,* the Court referred to the three previous cases which we have discussed and stated the construction of the statute in *Greenfeld v. Hook,* as follows: "We construed Secs. 209 of Article 56, so far as it applied to the facts of the case, as mandatory, and held it was the imperative duty of one driving a motor vehicle upon an unfavored highway as he approached an intersecting highway designated as a boulevard to stop before entering the intersection and once having stopped to exercise diligence to discover approaching traffic and, having entered the intersection, to yield the right of way to such traffic, and that this duty pertained throughout his passage across the favored way." In the Pegelow case, the plaintiff, who was a passenger on a motorcycle, was on the favored highway. The plaintiff's first prayer, which had been refused, said that if the jury should find that failure of the defendant either to come to a full stop before entering or crossing the arterial highway, or to yield the right of way to the motorcycle, upon which the plaintiff was riding, caused or contributed to the accident complained of, then the verdict must be for the plaintiff. The Court said that the prayer was defective "in failing to require the jury to find that appellee's failure to obey

the rule with regard to stopping his motor vehicle before entering the boulevard was the proximate cause of the accident, for under it, if they found that such failure 'contributed' to the accident the plaintiff would still have been entitled to recover."

This case was followed by the case of *Madge v. Fabrizio,* 179 Md. 517, 520, 20 A. 2d 172, 174. In this case the plaintiffs were entering Eastern Avenue in Baltimore City, from Carroll Island Road when the automobile in which they were passengers came in contact with a truck. Eastern Avenue is a boulevard. The Court granted a demurrer prayer on behalf of the truck owner, and from a judgment in his favor the plaintiffs appealed. The angle of Eastern Avenue and Carroll Island Road is acute. The driver of the plaintiff's automobile said that he intended to continue on his side of Carroll Island Road until he had passed the center line of Eastern Avenue, and then turn in a southwesterly course. In doing this, the vehicle was suddenly in collision with the truck which was driving easterly on Eastern Avenue. The Court, in speaking of the previous decisions which we have cited, said "from those decisions, it may be definitely stated that for a driver to enter such a boulevard without stopping or, having once stopped, to enter upon the favored highway before yielding the right-of-way to vehicles thereon is an act of negligence on his part, because there is no requirement that the motorist upon the boulevard should slow down at intersections, for the reason that the purpose of the statute is to permit such vehicles to move freely, thus accelerating the flow of traffic over such favored highway; and it may also be said that the driver of a motor vehicle upon the boulevard has a right to assume that those entering thereon will respect the prohibition of the statute." At a later point in the opinion, it is said, "In view therefore of the mandatory provision of the statute, it would follow that if one drives upon a boulevard and collides with a vehicle lawfully thereon, he himself is negligent, and under such circumstances courts will not be diligent in submitting his case to the consideration of a jury sim-

ply because he unsuccessfully attempted to dodge the boulevard vehicle, for plainly to send such a case to the jury, renders the statute meaningless and the result is nothing more than statutory repeal by the judiciary."

The latest case is *Rinehart v. Risling,* 180 Md. 668, 26 A. 2d. 411. In that case the plaintiff was a passenger in a car which entered a favored highway from an unfavored highway, after stopping. The driver of the truck which hit the car said that the first thing he saw was the lights of the plaintiff's car as it came out on the road between two banks. There was a very heavy rain falling at the time. The Court quoted at length from the Madge-Fabrizio case, *supra,* and said that the defendant's demurrer prayer should have been granted because there was no legally sufficient evidence of primary negligence on the part of the driver of the truck, which was on the favored highway, and the driver had the right to assume that the unfavored car would respect the provisions of the statute.

What the statutes, as interpreted by these decisions, mean is that a driver who enters, from an unfavored highway, an intersection with a favored boulevard or arterial highway where there are no traffic controls must yield the right of way to all the traffic he finds there during the entire time he is there. If he does not, and a collision results, he is at fault and cannot recover against the other driver unless the doctrine of last clear chance enters the case. So far as his rights as a plaintiff are concerned, it makes no difference what the other party does in the first instance. He is negligent because he has not yielded the road. Being negligent himself, his action is barred. But when he is made a defendant in an action for damages resulting from the collision, he can always show that the other party was also guilty of negligent contributing to the accident, and if he succeeds in this, no verdict can be obtained against him. Then both parties are negligent.

There is general agreement between the parties of the cases before us on the spot where the accident occurred, although there is a sharp disagreement as to the course of the two vehicles before they reached the point of contact.

This point of contact was within the intersection as defined by the statute, and as Shedlock failed to give the right-of-way to Marshall within this intersection, he was clearly negligent and therefore, could not recover against Marshall, unless the latter had a chance to avoid the accident after he saw or should have seen it was imminent.

Shedlock's second prayer, which was refused, would have submitted to the jury the right to find that, even if he were negligent, he would be entitled to a verdict if the jury found that Marshall could have avoided the accident by the exercise of ordinary care after he saw that Shedlock was entering an intersection without stopping, and was failing to give him the right-of-way, and was in his path and in danger of being struck. Shedlock's testimony was that he stopped at the favored highway, saw nothing, and went into the Philadelphia Road, heading east, at the rate of 22 miles an hour, when Marshall's truck came out from under the bridge, through a fog, at a high rate of speed and struck him. There is nothing in this evidence, if believed by the jury, which would indicate in the slightest degree that Marshall had an opportunity to stop after he saw Shedlock. Marshall's testimony was that he saw Shedlock some distance away, coming down Monument Street toward the intersection, that he, Marshall, was on the right side of Philadelphia Road, that he saw Shedlock slow down, that he had no reason to suspect that Shedlock was going to enter the intersection without stopping, but that the latter did suddenly cut around in front of him and that he had no opportunity to stop before the impact. There is, in his version of the case, no evidence justifying the application of the last clear chance doctrine. Much is made by Shedlock of the fact that Marshall's driver testified he saw Shedlock 250 or 300 feet away, but he fails to attach importance to the fact that this was before Shedlock entered the intersection, and at a time when Marshall's driver had no reason to suspect that Shedlock was going to leave his place of safety and run into danger.

We do not find any evidence to justify the last clear chance doctrine in this case, and we think the plaintiff's

second prayer was properly rejected. The duty of Marshall was set out negatively in Marshall's first prayer which said that if his driver, when he saw Shedlock's automobile entering and crossing the intersection, was so close that he could not, by use of ordinary care, avoid the collision, then the verdict must be for Marshall. This was as much, if not more, than Shedlock was entitled to under the circumstances, when there was no evidence that Marshall could have avoided the collision after he saw that it was about to occur.

The defendant's third prayer was a proper statement of the law as applied to this case if the case was to be submitted to the jury. We think, however, that Marshall's E prayer should have been granted and the jury instructed in the case of Shedlock against him, 101 here, to return a verdict for the defendant. Since the jury found for the defendant in this case, the judgment in it will be affirmed.

In the case of Marshall v. Shedlock (No. 102 here), Shedlock's complaint is that the jury was told by the court in its oral charge that their verdicts must be consistent, and that as Marshall's prayer 3, already discussed, erroneously stated the law of the case, the jury, having found for Marshall as defendant, had to find for him as plaintiff. This is a *non sequitur*, but Shedlock's objection may be simply disposed of here by the fact that we have already held that Marshall's 3rd prayer was properly granted. The judgment in No. 102 will therefore be affirmed.

In the Miller case, which was against both Shedlock and Marshall, the granted fourth prayer correctly requested the jury to find that Shedlock's failure to yield the right-of-way was the proximate cause of the accident before finding a verdict for Marshall. Miller, of course, could not be bound by Shedlock's contributory negligence, and if Shedlock and Marshall were both negligent, and the negligence of both contributed to the accident he might have gotten a verdict against both. Shedlock's negligence had to be the proximate cause of the accident

before Marshall was absolved. There was no error in the rulings on the prayers offered in this case, and the judgments in both No. 103 and No. 104 will be affirmed.

*Judgment in No. 101 affirmed, with costs.*
*Judgment in No. 102 affirmed, with costs.*
*Judgment in No. 103 affirmed, with costs.*
*Judgment in No. 104 affirmed, with costs.*