## FOWLER v. DeFONTES

[No. 68, October Term, 1956.]

570

*Decided January 10, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Walter V. Harrison,* with whom were *Eugene A. Alexander, III* and *Amos I. Meyers* on the brief, for appellant.

*J. Gilbert Prendergast,* with whom were *Clark, Smith & Prendergast* and *Herbert F. Murray* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from the granting of defendant's, appellee's, motion for a judgment N. O. V. in a personal injury case after the jury had awarded damages to the plaintiff, appellant. On June 13, 1953, the appellant, Festus Fowler, in the junking business, was returning to the junk yard driving a horse and wagon west on Bloom Street in Baltimore City. He reached Druid Hill Avenue, a boulevard or stop street, forty feet in width, with four traffic lanes, each ten feet wide, and a collision occurred between his horse and wagon and an automobile driven by Robert DeFontes, appellee, which was proceeding south on Druid Hill Avenue.

Festus Fowler testified on his own behalf that he hired the horse and wagon he was driving that day. At about 12:30 P. M. he was at Bloom Street and Druid Hill Avenue crossing the boulevard. He stopped and looked and did not see anyone so he started across. As he got in the third lane of

traffic he looked again and a car was coming "real fast" and he pulled his horse to the left. The car was about half a block away. It did not change its speed or its course. He saw that the automobile was not going to slow up so he pulled to the left "real hard". On cross-examination he stated that he noticed a skid mark about thirty feet long after the automobile hit the horse. There was no one on the wagon with him. He knew the neighborhood very well and knew that Druid Hill Avenue was a through street, a boulevard, and at that point sloped somewhat down hill. He first looked up Druid Hill Avenue when he stopped at the boulevard. He did not see any car at all. When he looked again his horse was in the third lane of traffic and he saw the automobile half a block away. He saw he could not make it across. He pulled the horse to the left as far as he could because the automobile was not slowing at all. The left fender of the automobile hit the front wheels, the shaft, and the horse, threw him on the street on his back, and skidded to the right down Druid Hill Avenue. Further, on cross-examination, he was confronted with a deposition which he had made before the trial. He had stated in that deposition that after he stopped and looked to his right where he could see for a block he started on across the street. He looked again to his right when the horse was in the left lane going across. This was the second time he had looked. The car was then so close that he could not get the horse out of the way. It was a little farther away than the length of the wagon. There were no other automobiles on Druid Hill Avenue except appellee's car and all four lanes were clear. He further testified on cross-examination that when he looked the second time, the car was half a block away. He admitted that the reason he said that it must have been a half block away was because the collision happened so quickly and he imagined it was just a half block away. He admitted that he had stated a year before in his deposition that he did not know how far the car was away at that time. He also admitted that in his deposition he had said the only skid marks he saw were from the horse and the wheels of the wagon, and he did not see any skid marks from the wheels of the automobile.

Robert DeFontes, appellee, testified that he was driving his mother's automobile south on Druid Hill Avenue. There was no other traffic that he remembered. It was a clear day and he had no difficulty seeing the horse and wagon when it started across the street. He was a little over half a block away then. He stayed in the same lane he was in. The horse was walking and continued walking and he continued driving south. The horse and wagon got right in front of him. When he realized that the horse and wagon were not going to stop he made an attempt to stop. He said that many cars pull out into the boulevard and then stop. When he saw the horse and wagon coming across the boulevard when he was half a block away or a "little better", he continued on because he thought he had the right of way. He attempted to stop when he was about a quarter of a block away from the appellant. He was not speeding and he was not going slow either. His 1951 Mercury car had four wheel brakes. He could not stop in time and covered the quarter of a block and hit the horse and wagon. The brakes were working all right. He got out of the car and walked back to Fowler. His automobile made a skid mark before he got to Bloom Street. He did not skid after he hit the wagon. At the time of the accident he was in the right lane and there were no automobiles in the lanes to his left. At that time Druid Hill Avenue was a one way street southbound so there were four traffic lanes which he could have used driving south. When he first saw the horse and wagon the horse was approximately at the curb line on the left side of the street as he was going south. That would be the east curb of Druid Hill Avenue. At that time he was approximately three-quarters of the way up the block. The horse was walking and the wagon was moving slowly. He tried to turn to the right at the time of the collision. His brakes had been applied. He turned the car to the right as far as he could. The horse and the car came together side by side. The horse was still headed west. On redirect examination he testified that he did not know how far he skidded before he hit the horse and wagon. He was driving on the right side of the street, the first lane on the right of the center.

The trial judge submitted the case to the jury under the last clear chance doctrine. A verdict was returned in favor of the appellant, plaintiff. Thereafter, the appellee, defendant, filed a motion for judgment N. O. V. which was granted and judgment entered for the appellee, defendant, for costs. From that judgment the appellant appeals.

It is provided by Code, 1951, Article 66½, Section 198: "(Vehicle Entering Through Highway or Stop Intersection.) (a) The driver of a vehicle shall come to a full stop as required by this Article at the entrance to a through highway and shall yield the right of way to other vehicles approaching on said through highway." By Code, 1951, Article 66½, Section 207, the State Roads Commission or appropriate local authorities are given power to designate through highways and to erect stop signs at specified entrances thereto. Subsection (c) of that Section provides: "Every driver of a vehicle shall come to a full stop at such sign or at a clearly marked stop line before entering an intersection and yield the right of way to vehicles approaching on the intersecting highway except when directed to proceed by a peace officer or traffic control signal."

In reviewing those statutory provisions, Judge Henderson pointed out in *Baltimore Transit Co. v. O'Donovan,* 197 Md. 274, 277, 78 A. 2d 647, that those rules, applicable to collisions between motor vehicles at the intersections of through highways, have been clearly stated and applied in recent cases. He said: "The cases were carefully reviewed in *Shedlock v. Marshall,* 186 Md. 218, 46 A. 2d 349. In that case we stressed the duty of the unfavored driver not only to stop but to yield the right of way to the favored vehicle during its entire passage over the intersection. In *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174, 49 A. 2d 537, where the suit was by a passenger in the unfavored vehicle, the emphasis was placed upon the right of the favored vehicle to proceed upon the assumption that the unfavored vehicle would stop and yield the right of way. We held that the proximate cause of the accident was the entry of the unfavored vehicle rather than the speed of the favored one. Since the primary purpose of the statute is to speed the huge and growing volume of traffic, it would be

quite impractical to require the operators of vehicles on the favored way to anticipate infractions of the peremptory command, and reduce speed at every intersection. *Blinder v. Monaghan,* 171 Md. 77, 83, 188 A. 31; *Madge v. Fabrizio,* 179 Md. 517, 520, 20 A. 2d 172." This was repeated in *Brooks v. Childress,* 198 Md. 1, 10, 81 A. 2d 47. For other cases holding that the favored driver has the right to assume that the unfavored driver will stop and allow him to proceed, see *Pegelow v. Johnson,* 177 Md. 345, 9 A. 2d 645, and *Sonnenburg v. Monumental Tours,* 198 Md. 227, 81 A. 2d 617. It was held in *Belle Isle Cab Co. v. Pruitt, supra,* 180, that the favored driver had the right to assume that the unfavored driver would stop before entering the intersection and would yield the right of way in any event up to the very moment of impact. As stated in *Shedlock v. Marshall, supra,* 235, the unfavored driver must yield the right of way to all the traffic he finds on the boulevard during the entire time he is there.

Of course, although the favored driver has the right to assume that the unfavored driver will yield the right of way to him, that does not mean that the traveler on the favored highway has an absolute, unqualified, and complete right of way at all times and under all circumstances. This right of way is to be enjoyed with due regard to the circumstances then and there existing. *Carlin v. Worthington,* 172 Md. 505, 508, 192 A. 356; *Shedlock v. Marshall, supra,* 231.

In *Shedlock v. Marshall, supra,* the favored driver saw the unfavored vehicle from two hundred fifty to three hundred feet from the intersection when the unfavored driver drove suddenly in front of him. The favored driver, in an effort to avoid the collision, drove over the curb and turned over. It was there held that there was no evidence that the favored driver had the last clear chance to avoid the collision and that he was entitled to a directed verdict. In *State v. Gosnell,* 197 Md. 381, 79 A. 2d 530, the motorist on the unfavored highway, even though he had observed the lights of two cars which were allegedly racing on the boulevard two-tenths of a mile away, drove slowly across the favored highway. It was held that, although the vehicles on the favored highway were racing and traveling at an unlawful speed, those favored

drivers had the right to assume that the unfavored vehicle would comply with the boulevard statute, and the doctrine of last clear chance did not apply. In *Baltimore Transit Co. v. O'Donovan, supra,* 276, the unfavored driver testified that the bus was about 175 feet from the intersection traveling about twenty-five miles an hour when he started to cross the boulevard. The unfavored driver contended in this Court that the bus driver failed to stop "when it was, or should have been, apparent to him that the automobile was standing disabled ahead of him", and that therefore the automobile was in a helpless position and it was negligence for the favored driver not to avoid the collision. It was held that the doctrine of last clear chance did not apply. See also *Brooks v. Childress, supra,* and *Meldrum v. Kellam Distributing Co.,* 211 Md. 504, 128 A. 2d 400.

One is guilty of concurrent negligence who negligently occupies a position of known danger, and continues to occupy it until injury results, when he could by reasonable care and diligence have escaped therefrom in time to have avoided the injury, and where the other person, the defendant, although he knew of plaintiff's position, may reasonably have inferred that he would move to a place of safety in time to escape injury. *Legum v. State,* 167 Md. 339, 355, 173 A. 565. It was said in *West v. Belle Isle Cab Co.,* 203 Md. 244, 252, 100 A. 2d 17: "Further, if, as the testimony indicates, she suddenly stepped from between the parked cars, she was guilty of contributory negligence which was concurrent with the negligence of the driver, if negligence there was, and under those circumstances, the doctrine of last clear chance would not be applicable." It was said in reference to the doctrine of last clear chance in *Martin v. Sweeney,* 207 Md. 543, 552, 114 A. 2d 825, quoting from *United Rys. v. Sherwood Bros.,* 161 Md. 304, 157 A. 280, and from *O'Keefe v. Baltimore Transit Co.,* 201 Md. 345, 360, 94 A. 2d 26: " '* * * But even if there were evidence that the motorman could have stopped the car after he saw or should have seen the truck in a position of peril, still, if the chauffeur could then have escaped by the exercise of ordinary care on his part, the doctrine would not apply. It would then be a case of concurrent negligence. * * *' "

Here, the uncontradicted evidence shows the following: Both the appellant and the appellee knew that Druid Hill Avenue was a one way boulevard street. Both knew that there would be no traffic coming from appellant's left. Appellee had a right to assume, even though he saw appellant enter the intersection, that appellant would yield him the right of way. If appellant had stopped before he reached the center of Druid Hill Avenue, there would have been no collision. Although Fowler was under a duty to look to his right during his entire passage across (*Joeckel v. Baltimore Transit Co.*, 208 Md. 586, 590, 119 A. 2d 373, and cases there cited) this one way boulevard, he stated that after he entered he did not look again until his horse was in the third lane of traffic. At one time he stated that at that time the automobile was half a block away. At another time he said when he looked the automobile was only about the length of the wagon from him. This is a case in which appellant negligently occupied the street and continued to occupy it until he was struck. He could by reasonable care and diligence have escaped therefrom by stopping before he reached the center of the street. Although appellee knew that appellant was crossing the boulevard, he could reasonably have inferred that appellant would have his horse in a place of safety in time to escape injury.

We must therefore conclude that, even assuming negligence on the part of the appellee, there was concurrent negligence as a matter of law on the part of the appellant and that, therefore, the trial judge was correct in granting the motion N. O. V. and entering judgment for the appellee for costs.

*Judgment affirmed, with costs.*