Louise B. HALL, Appellant,

v.

Henry Robert HAGUE et al., Appellees.

William D. HALL, Appellant,

v.

Henry Robert HAGUE et al., Appellees.

Nos. 4549, 4550.

District of Columbia Court of Appeals.

Argued May 5, 1969.

Decided Oct. 3, 1969.

William D. Hall, with whom Louise B. Hall was on the brief, pro se.

John J. Mitchell, Rockville, Md., with whom Edward C. Donahue, William A. Ehrmantraut, Rockville, Md., and James P. Gleason, Washington, D. C., were on the brief, for appellees.

Before KELLY, KERN and GALLA-GHER, Associate Judges.

KERN, Associate Judge.

On the morning of January 8, 1963, appellant Louise Hall, accompanied by her infant daughters in her automobile, collided with an automobile driven by appellee Henry Hague, a minor, at the intersection of Goldsboro and River Roads in Maryland. She sued Henry Hague and appellee James Hague, who owned the car his son had been driving, to recover for personal injuries and property damage. Her husband, appellant William Hall, brought a separate action for the loss of services of his children and of time from his own professional duties caring for his wife and children and for mental anguish he suffered as a result of their injury. His action was joined with her suit for a trial by jury.

Appellees conceded that the younger Hague had been negligent but advanced the defense of contributory negligence on the part of Mrs. Hall. Accordingly, they confessed to the entry of a judgment against themselves in the amount of the hospital and doctor's bills for the Hall children. The remainder of appellants' claims were submitted to the jury which returned a verdict in favor of appellees. Appellants challenge on this appeal the trial court's instructions to the jury and its refusal to admit into evidence certain portions of the Maryland Code relating to the regulation of traffic on Maryland highways.

The evidence may be summarized as follows. Appellee Henry Hague was driving his father's automobile to school at 60 miles per hour westward on River Road shortly before nine o'clock in the morning. The speed limit was 35 or 40 miles per hour and his excessive speed attracted the attention of a Maryland police car which paced him for a few blocks. The police were about to stop him, although they had not sounded their siren or blinked their light, when he reached the top of a hill on River Road before it descends into an intersection with Goldsboro. The streets were "moist" or "wet", the day was cloudy and River Road had been widened into a four lane highway but construction work was still in progress. There were "Slow" signs and "Caution" signs with amber blinking lights along Hague's side of River Road as he drove away from the city. The stoplight normally in place at the intersection had not yet been put back and a stop sign controlled all Goldsboro Road traffic moving across River Road.

Mrs. Hall was on Goldsboro and attempting to cross River Road. She saw Hague at the top of the hill some 1,000 feet, or a city block, away and proceeding from her right to her left on the far side of River Road. Although she realized that her Corvair's engine was cold and had little pickup and that appellee was coming toward the intersection at a high rate of speed, she thought she could get all the way across River Road in front of him. One of the trailing police officers characterized her pulling out as a "hazard" and that it was "fairly apparent" that the two cars were going to collide.

Appellee Hague testified that he thought Mrs. Hall was hesitating at the median strip which divided River Road and he concluded that she would stop rather than proceed further through the intersection. He shifted from high gear to a lower gear and pulled from the lane closest to the median strip to the next lane over on River Road in order to pass in front of her. In the meantime, she accelerated her car in an

effort to pass in front of him. He applied his brakes some 90 feet from the point of impact but the two cars collided at an angle so that his left front fender struck her right rear fender. Appellee testified that his tires were worn but still had some tread. The accident report filed by the police indicated that neither car had any mechani-·cal defects.

Appellants contend that the trial court erred (1) by instructing the jury on the so-called "Maryland Boulevard rule" to guide its determination whether Mrs. Hall was contributorily negligent and (2) by refusing to instruct the jury on the doctrine of "last clear chance". The trial judge fully discussed these contentions in a memorandum opinion denying appellant's motion for a new trial and we attach the pertinent part of such opinion as an Appendix to this opinion. We agree with Judge Malloy's discussion and think nothing need be added to it.

■ Appellants also contend that appellee Henry Hague's conduct was "grossly reckless and wanton". Therefore, they argue, the trial court should have submitted to the jury the issue whether young Hague was grossly negligent and should have charged the jury that if it so found it must render a verdict for appellants, even if Mrs. Hall had been contributorily negligent. *See* Prosser, Law of Torts 436 (3d ed. 1964). In Maryland, gross negligence is a wanton or reckless disregard for human life or for the rights of others. White v. King, 244 Md. 348, 361, 223 A.2d 763, 771 (1966). It is indifference to the consequences and "the omission of that care 'which even inattentive and thoughtless men never fail to take of their own property' * * *. It implies malice and evil intention." Bannon v. Baltimore & Ohio R. R. Co., 24 Md. 108, 124 (Ct.App.1866). *Cf.* Duren v. State, 203 Md. 584, 588, 102 A.2d 277, 281 (1954).

■ We do not think that the facts of this case show such aggravated conduct

on the part of appellee Henry Hague as to have justified an instruction on gross negligence. There was evidence that he shifted into a lower gear when he first became aware that Mrs. Hall was attempting to cross the intersection in front of him and that he subsequently sought to avoid the collision by braking and swerving. Contrary to appellants' assertion, the record indicates that Henry Hague's vision was normal when corrected by glasses, which he was wearing at the time of the accident, and that his tires were not so defective as to cause the police on the scene to make note of any such defect. There is nothing in the record to suggest, as appellants contend, that appellee Henry Hague drove into appellant Louise Hall's car because he was attempting to evade arrest by turning right from River Road onto Goldsboro Road.

■ Finally, appellants argue that the trial court should have permitted them to read to the jury sections of the Maryland Code which require a driver who changes from one lane to another to give a signal and a driver to slow when he sees a flashing amber light at an intersection. Neither of these provisions was applicable under the facts of this case and the court correctly refused to permit them to be read.

Affirmed.

### APPENDIX

It is clear that the Maryland Motor Vehicle Law imposed on the female plaintiff in this case the duty of stopping at the stop sign on the south side of River Road and yielding the right-of-way to vehicles approaching on that highway. Section 233 (b) of Article 66½ of the 1957 Annotated Code of Maryland provides:

"(b) *Stopping in obedience to stop sign*—The driver of a vehicle shall likewise come to a full stop in obedience to a stop sign and yield the right-of-way to a vehicle approaching on the intersecting highway as required herein at an inter-

section where a stop sign is erected at one or more entrances thereto although not a part of a through highway."

In the recent case of Hardy v. Sandler, 245 Md. 621, 227 A.2d 3 (Md.Ct.App.1967), the Maryland Court of Appeals held that the statutory obligation to yield the right-of-way imposed by section 233(b) is not discharged by a mere stop but persists throughout the entire passage across the favored highway. The Court said at 227 A.2d 4:

"We, and our predecessors, have held rigorously and consistently, that the statutory obligation to yield the right of way when entering the favored highway is not discharged by coming to a full stop, but extends to the entire passage across the favored highway. The operator on the favored highway has a right to expect that the driver on the unfavored highway will observe this obligation and need not slow down when approaching the intersection of the favored highway and the unfavored street."

The Maryland Court of Appeals has also held that the unfavored driver cannot relieve himself of the duty to yield the right of way to a vehicle approaching on the favored highway by a claim that the favored driver was exceeding the speed limit. Davis v. Taylor, 217 Md. 84, 141 A.2d 706 (Md.Ct.App.1958); Zeamer v. Reeves, 225 Md. 526, 171 A.2d 488 (Md.Ct.App.1961).

█ In the instant case, the testimony of the female plaintiff established that she entered a boulevard or through highway from an unfavored one controlled by a stop sign; that she saw the defendant approaching the intersection on the favored highway; that she failed to yield the right-of-way to the defendant's vehicle; and, that the collision occurred within the intersection. While this testimony clearly establishes that the female plaintiff violated the Motor Vehicle Law, plaintiffs contend that an instruction on the doctrine of last

clear chance was still warranted. The Court does not agree.

The Maryland rule as to last clear chance was stated as follows in the case of State, for Use of Taylor v. Barlly, 216 Md. 94, 140 A.2d 173, 177 (Md.Ct.App.1958):

"It is implicit in the rule that both the plaintiff and defendant were negligent. The doctrine presupposes a perilous situation, created or existing through the negligence of both the defendant and the plaintiff. * * * It assumes that there was a time after such negligence has occurred when the defendant could, and the plaintiff could not, by the use of the means available avert the accident. * * * Consequently, this Court has held on many occasions that, in order for the rule to apply, the defendant's negligence must have been sequential, and not concurrent. * * *" [citations omitted].

In Fowler v. De Fontes, 211 Md. 568, 128 A.2d 395, 399 (Md.Ct.App.1957), it was said that:

"One is guilty of concurrent negligence who negligently occupies a position of known danger, and continues to occupy it until injury results, when he could by reasonable care and diligence have escaped therefrom in time to have avoided the injury, and where the other person, the defendant, although he knew of plaintiff's position, may reasonably have inferred that he would move to a place of safety in time to escape injury."

Chief Judge Thomsen of the United States District Court has correctly stated in Mumford v. United States, 150 F.Supp. 63, 67 (D.Md.1957), that, "The Court of Appeals of Maryland has seldom applied the 'last clear chance' doctrine in automobile cases, but has usually held that the opportunity the plaintiff had to extricate himself from the peril made it a case of concurrent negligence." Accordingly, in Fowler v. De Fontes, *supra*, the plaintiff was found to be concurrently negligent in failing to

bring his horse and wagon to a stop after entering a boulevard even if the defendant was negligent in failing to stop after discovering the plaintiff's peril. And, in *Meldrum v. Kellam Distributing Company,* 211 Md. 504, 128 A.2d 400 (Md.Ct.App. 1957), it was held that the negligence of a truck driver in turning left from a boulevard continued until the favored driver collided with his truck so as to amount to concurrent negligence barring the application of the doctrine of last clear chance.

The case of *State, to Use of Frizzell v. Gosnell,* 197 Md. 381, 79 A.2d 530 (Md.Ct. App.1951), involved a factual situation analogous to the one presented by the case at bar. In *Gosnell,* the motorist on the unfavored highway, even though he observed the lights of two cars which were allegedly racing on the boulevard two-tenths of a mile away, drove slowly across the favored highway. It was held that, although the vehicles on the favored highway were racing and travelling at an unlawful speed, those favored drivers had the right to assume that the unfavored driver would comply with the boulevard statute and the doctrine of last clear chance did not apply.

The case of *Greenfeld v. Hook,* 177 Md. 116, 8 A.2d 888, 136 A.L.R. 1485 (Md.Ct. App.1939), in which Judge Offutt found facts which raised a jury question on the liability of the favored driver under the doctrine of last clear chance, is distinguishable from the case at bar. In *Greenfeld,* there was evidence to show that the unfavored plaintiff did not see the defendant's unlighted vehicle approaching the intersection. The evidence also showed that the defendant failed to see the plaintiff's automobile in a position of peril in time to have attempted to avoid the accident when, "the plaintiffs position was or should have been apparent to the defendant for nearly half a square." In the instant case, the plaintiff saw the defendant's automobile approaching the intersection and the defendant, when he observed the plaintiff in position of peril, swerved into the outside westbound lane of River Road in an attempt to avoid a collision.

In the case before the Court, Mrs. Hall was contributorily negligent in failing to yield the right-of-way to the defendant's vehicle which she saw approaching the intersection at a high rate of speed. She could, nevertheless, by the exercise of ordinary care, have escaped from her position of peril in time to have avoided the accident by stopping, or otherwise. While the defendant was speeding, the plaintiff's conduct in attempting to cross the boulevard in front of the defendant amounted to concurrent negligence so as to bar the application of the doctrine of last clear chance. The plaintiff's motion for a new trial will therefore be denied.