PALMER *v.* SCHEID, JR.

[No. 77, September Term, 1960.]

614

*Decided December 14, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*James L. Wray,* with whom were *William J. McWilliams* and *McWilliams & Melvin* on the brief, for appellant.

*William F. Mosner,* with whom was *Malcolm B. Smith* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

The appellant-defendant, being dissatisfied with a judgment entered against him after an adverse jury verdict, in the Circuit Court for Anne Arundel County, for damages resulting from an automobile collision, has appealed.

He contends that the appellee-plaintiff was contributorily negligent as a matter of law in failing to comply with the Code (1957), Article 66½, Sections 227 and 233 (a),[1] and in failing to exercise reasonable care for his own safety.

On December 16, 1957, a dry, cloudy day, at about 2:45

1. Section 227. No person shall start a vehicle which is stopped, standing, or parked without giving adequate hand signal to oncoming traffic and until such movement can be made with reasonable safety.

Section 233. (a) *In general.*—The driver of a vehicle shall come to a full stop as required by this article at the entrance to a through highway and shall yield the right of way to other vehicles approaching on said through highway.

P.M., the appellee Scheid and one Hall, both Internal Revenue Service agents, were traveling south on the Ritchie Highway. This thoroughfare has four lanes for traffic: two each for northbound and southbound traffic, with a median strip, six and one-half feet wide, in the middle.

Scheid was driving a government-owned Ford Sedan. At Ordnance Road, approximately a quarter of a mile north of the accident scene, he stopped in the right, or slow, lane at a red traffic light. Traffic was heavy in both southbound lanes. While waiting for the light to change to green, he and his companion noticed a suspected liquor law violator at the wheel of a truck in front of them, also headed south. After the light changed to green, the southbound traffic began to move, and, in a short distance, the suspect turned left into Cherry Lane. Scheid decided to follow him, but as there was no urgency, thought he would continue south for a short distance, turn around and return to Cherry Lane.

He proceeded south for a short distance, remaining in the right lane, until he came to a crossover, which turned out to be the location of the accident. Beginning at the crossover and running north, the southbound portion of the highway is broadened by a cement apron to accommodate traffic coming into the highway from the Harbor Tunnel Cut Off. Scheid pulled over to his right onto this apron and stopped, in order to permit southbound traffic to clear from his rear before making his turn.

From this point on, the testimony of the respective parties is conflicting in some of its aspects, but, for the purposes of this case, it must be considered in the light most favorable to the appellee.

Scheid remained at a standstill on the apron for some 20 seconds, until all southbound traffic had cleared. He looked to his rear, where his vision was unobstructed for about 300 yards to the crest of a hill, and there was no traffic in sight coming from the north toward him. He turned his car to the east and proceeded to the crossover, where he was required to stop, because of northbound traffic. About six feet of his automobile was in the crossover, which left, approximately, ten feet projecting into the southbound lane. He remained in

this position for some 20 seconds, and was just about to pull out into the northbound lane, when he glanced to his left and saw the appellant's southbound car in the fast lane coming down upon him. There was no other southbound traffic in the immediate vicinity. Before Scheid could drive his car from the path of the oncoming vehicle, the rear portion of his car was struck, and he was injured as a result of the collision.

Officer Griffith, of the County Police Department, arrived at the scene within a few minutes after the accident. He testified that he found no skid marks attributable to the appellant's car; the appellant told the witness that he did not see Scheid's car until it was too late to stop; and his reason for not seeing the car was that he was tuning his radio.

Under the above circumstances, the appellant contends that the law of this State required the appellee to ascertain that traffic was clear in both the southbound and northbound lanes, so that he could uninterruptedly complete his turn. He argues that the boulevard law (Section 233 (a)) was applicable, and the appellee was duty bound to yield the right of way all the way across the highway to all motor vehicles thereon, traveling either north or south. Furthermore, he claims that the provision of Section 227, stating that "[n]o person shall start a vehicle which is stopped * * * until such movement can be made with reasonable safety," likewise, required the appellee to be certain that he could complete his turn into the northbound lanes, without interruption, and, at the same time yield the right of way to all vehicles on the highway, either northbound or southbound.

We do not find the argument persuasive. We think our recent holding in *Safeway Trails v. Smith*, 222 Md. 206, 159 A. 2d 823, is authoritatively and conclusively decisive here. In that case, as in this one, the operator of a motor vehicle [turning to the left over a crossway from a four-lane dual highway separated by a median strip] was not *entering* a through highway, but leaving one. Judge Hammond, for the Court, stated, "[b]y its express terms, the boulevard law controls entrance onto the favored highway; exit from it is not mentioned." We held that the boulevard law was inapplicable; and observed that Maryland permits motor vehicles of

certain lengths (which length often exceeds the width of the median strips) to be operated upon its highways, and allows left turns to be made over the crossways (in fact, the accommodation of left turns is their principal function), which, on occasions, necessarily result in a portion of a motor vehicle protruding into the boulevard lane about to be vacated, until the left turn can be completed. We further held that the negligence, *vel non*, of the operator making the turn was properly submitted to the jury. In the instant case, the appellee, as stated above, was not entering a boulevard; he was crossing to the lanes of traffic going in the opposite direction. We have been referred to no authority, and have found none, that required him to make certain that he could complete his turn without interruption. He had ascertained that no vehicle was approaching from his rear for the full distance of his vision. Under the circumstances, his conduct cannot be said to be contributorily negligent as a matter of law. And there is no inconsistency between what we have just said and anything that we held in the cases of *Fowler v. DeFontes,* 211 Md. 568, 128 A. 2d 395, *Dorschel v. Tzomides,* 214 Md. 341, 135 A. 2d 417, and *Wallace v. Fowler,* 183 Md. 97, 36 A. 2d 691.

Our holding above makes it apparent that Section 227 adds little, if any, weight to the appellant's argument. This section inhibits the starting of a stopped vehicle until the movement can be made with reasonable safety. The questions of primary and contributory negligence were submitted to the jury, under the conflicting theories of the parties, both questions being resolved in favor of the appellee. No exceptions were taken to the court's charge to the jury. In the light of what we have already said (without repeating), it is obvious that there is nothing in this section of the Code that would impel a ruling that the appellee was guilty of contributory negligence as a matter of law.

*Judgment affirmed, with costs.*