Frederick Z. GOOSMAN, to his own use and to the use of Royal Indemnity Company, a body corporate,

v.

A. DUIE PYLE, INC., a body corporate, Raymond A. Hill, Dennis R. Hill and Harry E. Anderson.

Civ. No. 12590.

United States District Court
D. Maryland.
June 12, 1962.

Paul Berman and Bayard Z. Hochberg, Baltimore, Md., and Rose Rothenberg, New York City, attorneys for plaintiff Goosman; Paul M. Higinbothom, attorney for use-plaintiff, Royal Indemnity Company.

John F. King, Baltimore, Md., attorney for defendant A. Duie Pyle, Inc.; Benjamin C. Howard and John F. King, Baltimore, Md., attorneys for defendants Hills and Anderson.

NORTHROP, District Judge.

This is a tort action arising out of a collision between an automobile owned and operated by the plaintiff Goosman and a tractor-trailer owned by the two defendants Hill, leased by them to the defendant A. Duie Pyle, Inc., and driven by the defendant Anderson. The case was tried before a jury. During the course of this trial, the plaintiffs dismissed their cases against all of the defendants except the corporation, which had conceded that Anderson was acting as its agent. At the conclusion of the trial, the plaintiffs moved for directed verdicts in their favor on the issues of Anderson's primary negligence and Goosman's contributory negligence. Both of these prayers were denied by the court, and the issues were submitted to the jury. It is from the jury's general verdict in favor of the sole remaining defendant, A. Duie Pyle, Inc., that the plaintiffs seek relief.

As is so common in situations such as this, the plaintiffs have moved for a judgment n. o. v. or, in the alternative, for a new trial. In deciding the questions presented under these motions, the court must apply two somewhat different standards. In ruling upon the motion for a judgment n. o. v., every factual issue must be resolved in favor of the defendant, to the extent allowed by the evidence and the inferences to be drawn therefrom; the evidence must be viewed in the light most favorable to the party prevailing at the trial. On the other hand, a court passing upon a motion for a new trial must weigh all of the evidence to determine whether the verdict was against the clear weight of that evidence or whether the verdict would result in

a miscarriage of justice. Williams v. Nichols, 266 F.2d 389 (4th Cir. 1959).

With this in mind, let us reconstruct the facts as the jury must be assumed to have found them—in the light most favorable to the defendant. It is essential to do so in considering the plaintiffs' contentions that the court erred in failing to grant directed verdicts in their favor on the issues of both primary and contributory negligence.

FACTS

The collision occurred on U. S. Route #40, a free-access highway, 950 feet east of its intersection with Maryland Route #152, in Harford County, Maryland. At this point, the highway is divided by a center strip approximately twenty-six feet in width and has two lanes for traffic in each direction. The time of the accident was about 7:00 p. m., December 9, 1959. It was dark, and both vehicles had on their lights. Anderson's tractor was carrying an unloaded, open, flat-bedded trailer with amber and red reflectors and lights along each of its sides; the length of the combined unit was about forty-six feet. Goosman was driving a 1958 Chrysler Imperial, equipped with an automatic throttle; at the time of the accident, this device was in operation and set for the maximum speed limit of fifty-five miles per hour.

Prior to the accident, Anderson's tractor-trailer was at the southern edge of the highway in a private drive at or just east of the crest of a hill. Although his unit was about twenty feet longer than the center strip was wide, Anderson wanted to make a left-hand turn to head west. There was a cross-over directly opposite him for just such a purpose. From his vantage point in the cab of the tractor, looking westward to his left, Anderson could see the roadway for a distance of approximately 600 feet and the reflections of headlights as far as the traffic control signal at Route #152, about 950 feet away. Eastward, to his right, there was a sharp downgrade; so, in that direction, Anderson could see only a distance of some 300 feet.

Before moving from his position of safety, Anderson made the traffic observations that should be expected of him. Looking to his left, he saw that the entire roadway visible to him was free of traffic; he could see neither automobiles nor headlight reflections. Looking to his right, he saw two vehicles moving toward the cross-over through which he intended to proceed. After making these observations, Anderson began to make his turn, assuming that the speed of the oncoming cars from his right would remain constant and that they would pass the cross-over by the time he arrived at its northern edge. He judged that he would be able to negotiate his turn without the necessity of stopping. His judgment was correct for, just as Anderson's tractor reached the edge of the westbound lanes, the two cars he had seen passed him. However, another westbound vehicle immediately came into view. Because it was moving too quickly for Anderson to complete his turn with safety, he was obliged to stop in the cross-over, the rear of his trailer blocking all of the northernmost of the two eastbound lanes.

The balance of Anderson's story can be told in his own words (Tr., at p. 197):

"Immediately, I looked to my left and still there was no reflection of any lights or cars in sight. I figured I would wait for the third car to go by.

"While I was waiting there, I still had to keep looking to my left because I knew part of my trailer was in the highway on the lanes, and when I seen the lights coming to my left, it was coming at a high rate of speed, I immediately looked to my right real fast to see if anything else was coming and there was just this one car in the slow lane.

"I started to ease my tractor out into the fast lane, the other side of the road, as fast as I could get without running into the road, I kept easing on out until I was as far as I could go, and that's when the acci-

dent happened, that's when I was hit."

At the moment of impact, Anderson's tractor was completely blocking the southernmost of the two westbound lanes. Thus, making reasonable allowances for "jack-knifing" about six to eight feet of the rear of Anderson's trailer was in the "fast" eastbound lane at the time of the collision.

On the basis of this testimony, the jury could have found that Anderson had stopped in the center strip when Goosman's automobile was more than 950 feet away. Also, with regard to the movement of the Goosman vehicle, the evidence was uncontradicted that he was traveling at the maximum permissible speed, in the left-hand lane, and with no traffic to his right. Although he probably could have seen the tractor-trailer when about 600 feet from the cross-over and although he could have passed to the right of it without leaving the paved portion of the highway, Goosman did not see the tractor-trailer and took no action until it was too late to avoid the accident. At the last moment, he applied his brakes and swerved hard to his right. After impact, Goosman's car came to rest wholly in the southernmost or "slow" traffic lane.

It might be added that, even if Goosman could not have seen Anderson's tractor-trailer any sooner than he did see it, the accident nonetheless might have been avoidable. There can be no doubt that the throttle in his car lengthened the time and space in which Goosman could bring his car to a stop. This device held the automobile at a fixed speed until the brake pedal was touched, thereby eliminating the normal "drag" between the time that the accelerator is released and the brake applied.

## DISCUSSION

*Should a verdict have been directed in favor of the plaintiffs on the issue of primary negligence?*

■■ The bases of the plaintiffs' arguments, both here and in connection with the denial of a directed verdict in their favor on the issue of contributory negligence, are the apposite section of the Motor Vehicle Laws and the cases interpreting Maryland's boulevard rule. The statute involved in this case is section 234 of the Annotated Code of Maryland, Art. 66½ (1957 ed.); it provides as follows:

"The operator of a vehicle entering a paved public higway, which is hereby defined to be a highway having a hard, smooth surface, composed of gravel, shells, crushed stone, paving blocks, asphalt, concrete or other similar substance, from an unpaved public highway, or from a private road or drive, shall come to a full stop upon reaching the intersection, and yield the right of way to all vehicles approaching on such paved public highway."

This section is to be construed and applied in the same manner as the so-called "boulevard sections." Shriner v. Mullhausen, 210 Md. 104, 122 A.2d 570, 821 (1956); see Annotated Code of Maryland, Art. 66½, §§ 233 and 242 (1957 ed.). For the moment, it is unnecessary to elaborately delineate the right of way conferred by Maryland's boulevard rule. Perhaps the rule can be summed up by simply saying that the privilege it confers upon the favored driver is substantial though not absolute. The cases applying the rule are legion. See Dunnill v. Bloomberg, 228 Md. 230, 179 A.2d 371 (1962); Merritt v. Darden, 227 Md. 589, 176 A.2d 205 (1962); Zeamer v. Reeves, 225 Md. 526, 171 A.2d 488 (1961); Green v. Zile, 225 Md. 339 (1961); Harper v. Higgs, 225 Md. 24, 169 A.2d 661 (1961).

■ Returning to the facts outlined above, no one contends that, merely because Anderson could have taken an alternative route by which the crossing turn could have been avoided, the bare fact of his failing to avoid this turn constituted negligence as a matter of law. Evidence on this point was proffered and admitted, and the question raised was argued to the jury and left to their resolution.

Nor is there, initially, any difficulty regarding Anderson's failure to yield to the plaintiff's right of way. When Anderson first moved from the southern edge of the road, Goosman was not yet on the scene; therefore, at least in the first instance, Anderson had no duty to yield to him.

"If the jury believed his version, he could hardly be held negligent in entering and making the turn when the way was clear as far as he could see. The obligation to yield the right of way could hardly demand that he remain there permanently or enter at his peril." Ness v. Males, 201 Md. 235, at p. 240, 93 A.2d 541, 544 (1953); see also Harper v. Higgs, supra, at p. 35, 169 A.2d 661.

Initially, there was no violation of the statute for, it cannot be interpreted to impose upon the unfavored driver (Anderson) "the impossible duty of yielding to vehicles the approach of which he cannot discover by making the required stop and using care." Standard Oil Co. of New Jersey v. Sheppard, 148 F.2d 363, at p. 364 (D.C.Cir., 1945), applying Maryland law.

Furthermore, when one considers the limitations upon Anderson's eastward vision, the cumbersome nature of his unit, and the absence of traffic coming from the west, it might be concluded that he attempted to negotiate his turn not merely in a reasonable, but in the most reasonable, manner possible. It is indeed probable that the only way in which he safely could have proceeded was to have left his position on the south side while the westbound lanes were not yet clear, but when they would have been clear upon reaching them. See Palmer v. Scheid, 223 Md. 613, at pp. 616–617, 166 A.2d 244 (1960).

The plaintiffs, of course, deny both the accuracy and the relevancy of these observations. It is their contention that the duty to yield means the unfavored driver must remain stopped until the highway is entirely free for his passage across it. But, the duties to stop and to yield are separately stated in the statute, though they are certainly co-ordinate; the former is required to enable one to make the observations necessary to comply with the latter. Fox v. Baltimore Transit Co., 194 Md. 403, 411, 71 A.2d 470 (1950). Here Anderson initially honored the duty to yield, even though he did not remain on the south side. While it is quite true that the duty to yield pertains to the entire highway,[1] this—at least in the instant case—is distinguishable from a duty to stay put, so to speak. In this case there was no duty to stay put, as a matter of law, even if one can infer such a duty from the Dunnill case, supra. The absence of a median strip in the Dunnill situation and the fact that there the defendant's vehicle was moving into the plaintiff's path make that case materially different from this. The Court of Appeals of Maryland clearly stated that Dunnill was "a somewhat unusual boulevard intersection automobile accident case." 228 Md. 230, at p. 231, 179 A.2d at p. 372. Therefore, we are reluctant to analogize the facts there to those here; they are most dissimilar.

Anderson commenced a turn permitted by law, lawfully yielded the right of way, and became stranded in the median strip. As we have indicated, the jury could have found that he was required to stop in the cross-over through no fault of his own. He had yielded the right of way to eastbound traffic—or, more correctly, there was no eastbound traffic to which to yield—but the appearance of a third westbound vehicle prevented him from completing his turn. Thus, Anderson was not negligent, as a matter of law, in entering the roadway; but, once there, he was obliged to have his vehicle under control in order to yield the right of way. Carlin v. Wor-

---

1. This point was underscored specifically in the court's instructions to the jury in this case. It was mentioned again after the jury had begun its deliberations but before a verdict had been reached, when the jury returned to the courtroom with a question on the same matter.

thington, 172 Md. 505, 192 A. 356 (1937). That he had his tractor-trailer under control and that he took all reasonable steps to avoid the collision are conclusions supported by the evidence, and the jury could have so found.

Admittedly, Anderson was placed in a position comparable in many respects to that of Mrs. Hurry, the unfavored driver whose stalled car blocked the roadway of the favored driver in Harper v. Higgs, supra. In that case, the trial court had directed a verdict against Mrs. Hurry on the issue of negligence. However, that *nisi prius* ruling was not taken before the Court of Appeals. Nonetheless, their opinion obliquely indicated that the direction of the verdict was erroneous. The Court pointed out (225 Md. at p. 36, 169 A.2d at p. 666) that the fact that the Hurry car was stalled was

> "one of the very things Greenfeld v. Hook [177 Md. 116, 8 A.2d 888, 136 A.L.R. 1485 (1939)] said could endanger an unfavored driver who entered a boulevard without negligence, that is, 'some defect in the motor' which prevented control of the car."

■ The Greenfeld case, to which the Harper opinion refers, is a leading Maryland decision in the area with which we now are concerned. All that need be said of the facts in that case is that the plaintiff, Mrs. Hook, was an unfavored driver in a crossing situation and her vehicle did *not* have the mechanical failures which produced the plight of Mrs. Hurry. Although the Greenfeld court used extreme and severe language in broadly stating the right of way conferred upon the favored driver,[2] it also delineated a significant qualification of that right of way: the unfavored driver is not guilty of negligence, as a matter of law and in every case, merely because of his or her presence on the favored highway. In Greenfeld v. Hook, the plaintiff, *an unfavored driver*, prevailed before the jury. It is true, of course, that the Court of Appeals reversed the jury's verdict and remanded the case for a new trial. However, the reversal was predicated solely upon an improper instruction, not upon the trial judge's refusal to direct a verdict for the favored driver. Indeed, the opinion of the appellate court made it quite clear that the direction of such a verdict would have been erroneous. 177 Md. 116, at pp. 120–121, 133, 8 A.2d 888. Under certain circumstances, then, whether or not the unfavored driver was negligent is a question for the jury. We are of the opinion that the case at bar presented such circumstances and that it would have been error to take the matter from the jury.

■ The plaintiffs dispute this. They contend that the jury could have resolved the issue of primary negligence in favor of Anderson only through making those "nice calculations" of time, speed, and distance which the boulevard rule precluded them from making. See the discussion by Judge Offutt in Green-

2. Judge Offutt, at one point in his opinion in Greenfeld v. Hook, commented as follows:

> "[I]t is the positive and imperative duty of a person driving an automobile over an unfavored highway when he approaches an intersecting highway lawfully designated as a 'boulevard' or 'Stop Street', to stop before entering the intersection, and having stopped, to exercise reasonable care and diligence to discover whether traffic thereon is approaching the intersection, and having entered the intersection to yield the right of way to such traffic, by permitting it to proceed without interruption, and * * * that duty persists throughout his passage across the favored way." [177 Md. 116, at p. 132, 8 A.2d 888, 895]

In his argument on the motions now under consideration, counsel for the plaintiffs laid great stress upon this language and upon the general construction given the Greenfeld decision in the later case of Shedlock v. Marshall, 186 Md. 218, 46 A.2d 349 (1946). Nonetheless, the qualifications of the boulevard rule set forth in Greenfeld have never been repudiated by the Court of Appeals of Maryland, and we are obliged to follow its teaching. We cannot, as the plaintiffs seemingly insist we must, disregard the actual disposition of Greenfeld v. Hook and emphasize some of its general language to a degree where that language becomes inconsistent with the outcome of the case.

feld v. Hook, supra, 177 Md. at pp. 125–126, 8 A.2d 888. This is not so. The prohibition against making *nice calculations* does not prevent a jury and judge from making *all calculations of every nature;* the prohibition pertains only to those close, hair-splitting calculations which cannot be expected of a reasonably prudent favored driver when immediately confronted by an intrusion upon his right of way. Where the times and distances are great, the calculations are no longer "nice," and the prohibition is inapplicable. Thus, it was observed in Harper v. Higgs, supra, 225 Md. at p. 35, 169 A.2d 661:

> "There was evidence below which, if believed by the jury, would have permitted, without 'nice calculations,' a finding that the Hurry car stopped at the intersection as the law requires and started across when there was no through traffic to which it was required to yield the right of way, that it traversed some twenty to twenty-five feet from a standing start and stood stalled under the blinker light for an additional five or more seconds before the collision, and that all during this time Mrs. Harper continued to approach at an undiminished speed without observing the road ahead * * *."

Calculations comparable to these were made, also, in Greenfeld v. Hook, supra, 177 Md. at pp. 133–134, 8 A.2d 888. In the case at bar, too, the jury could have found from the evidence that Anderson was free of negligence, and they could have done so without resorting to those close calculations enjoined by the boulevard rule. Anderson's version of the accident supports the conclusion that he already was standing in the cross-over when Goosman was more than 950 feet away.

Here, as in the Greenfeld case and the case of Mrs. Hurry, it cannot be said, as a matter of law, that Anderson was guilty of negligence merely because of his entering the highway. As the recitation of the facts should indicate, the jury could have found that Anderson became stranded in the cross-over without culpability and, once there, that he did whatever he could to avoid the accident. The issue was whether Anderson was in the exercise of due care, and that matter was for the jury to decide. As was so very well stated by Chief Judge Parker in Burcham v. J. P. Stevens & Co., 209 F.2d 35, at p. 38 (4th Cir., 1954):

> "Questions of negligence or contributory negligence are ordinarily questions of fact involving the application of the rule of the reasonably prudent man to the facts of the case, and they are not to be decided by applying 'rules of thumb' to the evidentiary facts and treating as conclusions of law what are in reality conclusions of fact."

This proposition was recently re-affirmed by the Fourth Circuit in McClure v. Price, 300 F.2d 538, at p. 544 (4th Cir., 1962), in the following language:

> "There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court." See Waid v. Chesapeake & O. R. Co., 14 F.2d 90, 93 (4th Cir., 1926), quoting from Texas & P. R. Co. v. Gentry, 163 U.S. 353, 368, 16 S.Ct. 1104, 41 L.Ed. 186 (1896).

Before leaving the question of primary negligence, one last point should be made,[3] although it alone would not

---

3. Actually, there is one more comment beyond that about to be discussed in the body of this opinion. However, it is an observation worthy only of a footnote.

128

justify the manner in which the jury were instructed. That is, assuming the only reasonable conclusion is that Anderson breached his duty to yield the right of way, it does not necessarily follow from this that the defendants are liable for the plaintiff's injuries. Because the jury could have found that the southernmost of the two eastbound lanes was unobstructed by Anderson's tractor-trailer, they might have been justified in finding that his failure to yield—if he did fail to yield—was *not* a proximate cause of the accident. That this was a jury question is confirmed by the Greenfeld case. 177 Md. 116, at pp. 133, 134, 8 A.2d 888.

*Should a verdict have been directed in favor of the plaintiffs on the issue of contributory negligence?*

■ With regard to the plaintiffs' position here, the jury could have found a number of things, which individually and aggregately militated against the direction of a verdict in the plaintiffs' favor on contributory negligence. It could have been found: first, Anderson already had stopped in the center strip when Goosman was more than 950 feet away from the scene of the collision; second, Goosman could have seen Anderson when about 600 feet away from him, for Goosman's line of vision was unobstructed from that distance, and Anderson's unit was well illuminated by lamps and reflectors; third, Goosman's automobile was maintaining the maximum permissible speed by means of a device which lengthened the distance in which the vehicle could be brought to a stop from the moment danger was perceived; fourth, Goosman was driving in the left-hand lane, despite the fact that there was no traffic to his right; fifth, because of Anderson's position, the unwieldiness of his

unit, and observable traffic conditions in the westbound lanes, it was unreasonable of Goosman to assume that his right of way would be honored; and sixth, Goosman could have passed to the right of Anderson's truck without leaving the paved portion of the highway.

■ Because the jury could have reached any and all of these factual conclusions, it is not understood how the court would have been justified in directing a verdict in the plaintiffs' favor with regard to contributory negligence. It is axiomatic that the right of way conferred by the boulevard rule is not absolute and does not absolve the favored driver of his common law duty to exercise due care. So well known is this qualification that one need not seek out precedents to substantiate it. For the purposes of the present motions, it is sufficient to point out that in both Greenfeld v. Hook and Harper v. Higgs, supra, the distance between the vehicles when the favored driver could or should have seen the unfavored driver was far less than that at which the jury could have found that Anderson's truck was first observable by Goosman. As the plaintiffs have pointed out, the right of way conferred by the boulevard rule is "rigorous and only in rare instances" should the jury be asked to consider whether the favored driver was or was not contributorily negligent. Dunnill v. Bloomberg, supra, 228 Md. at p. 235, 179 A.2d 371. However, the facts here presented just such a "rare instance"—as did the recent cases of Harper v. Higgs and Green v. Zile, supra. There can be no doubt that contributory negligence was a legitimate jury question and that it was proper to submit it. On this issue, the jury could have reached a verdict against the plaintiffs without resorting to nice calculations.

That is, it is interesting to note how much easier it would be to sustain the jury's verdict had Anderson not been *entering* the highway but *leaving* it. The fact that Anderson was entering, though it may have had no causal connection with the accident, radically affects the law we are to apply. Had Anderson been leaving,

Goosman would not have had the right of way, and the court probably would have been justified in directing a verdict in favor of the *defendants*. See Palmer v. Scheid, 223 Md. 613, 166 A.2d 244 (1960); Safeway Trails, Inc. v. Smith, 222 Md. 206, 159 A.2d 823 (1960).

*Was the verdict against the clear weight of the evidence?*

As was said at the outset, a court is obliged to view the evidence in the light most favorable to the prevailing party when the motion under consideration is one for a judgment n. o. v.; this has been done in the foregoing analysis and discussion. On the other other hand,

> "it is the duty of the judge to set aside the verdict and grant a new trial, if he is of opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Aetna Cas. & Sur. Co. v. Yeatts, 122 F.2d 350, at pp. 352–353 (4th Cir., 1941)

The jury's determination of this case was based largely upon their gauging the credibility of witnesses and choosing as truthful one of two conflicting versions of the accident. The defendants' version was substantially that presented above. The plaintiffs' evidence attempted to contradict this version in three material respects by establishing: first, that Anderson could or should have seen Goosman's car before he left the private drive, that he should have recognized that it presented a danger, and that he should have yielded the right of way; second, that Anderson failed to yield the right of way, because he was still moving across the eastbound lanes and had not yet stopped in the center strip when the accident occurred; and third, that Goosman could not see the tractor-trailer blocking his progress until it was too late to avoid the collision.

It is easily demonstrable that the jury were justified in rejecting this theory of the facts, for the plaintiffs' contentions are both self-contradictory and disputed by testimony that the jurors correctly might have accepted as impartial.

It is somewhat unreasonable to conclude—as indirectly urged by the plaintiffs—that Anderson should have seen the Goosman car at a time when Goosman, by his own testimony could not see the Anderson truck. The contradiction is obvious with regard to Goosman's testimony that the hill crest between his vehicle and the tractor-trailer obstructed his vision. Of course, Goosman also testified that he could not see Anderson's unit because its shape and color merged with the road, but the jury reasonably could have doubted Goosman's credibility on this point. Anderson's tractor-trailer was well and properly lighted. Also, the properties on either side of the highway were commercially developed, and the lights of these establishments must have brightened the road. Lastly, there were Goosman's own headlights and those of the westbound car that was preventing Anderson's turn.

Furthermore, there was substantial and convincing evidence to justify the conclusion that the tractor-trailer had reached the center strip and stopped there prior to the moment of collision. It was the uncontradicted testimony of the state troopers who investigated the accident that, after the collision, Goosman's car was standing wholly in the southernmost eastbound lane, just *east* of the cross-over. Also, Goosman himself testified that he did not know whether the truck was standing still or moving when he first saw it.

█ It cannot be said, therefore, that it was clearly against the weight of the evidence or a miscarriage of justice for the jury to reject—as we must assume they did—the plaintiffs' contentions and to adopt in their stead those posited by the defense.

*Was it error to deny plaintiffs' requests D, E, F, J, 2, 3, 3A, 4, 6, 7 and 8 through 11?*

Request D was for a directed verdict on the issue of contributory negligence. In view of what already has been said, its denial was proper.

█ Request E called for an instruction (1) that it was lawful for the plaintiff to drive in the left-hand lane and (2) that such conduct did not constitute neg-

ligence.[4] In substance, the first half of this request was granted. As to the balance, it was not authorized by the case cited to support it. Vogelsang v. Sehlhorst, 194 Md. 413, 71 A.2d 295 (1950). The Vogelsang opinion explicitly states that, while it is generally lawful to drive in the left-hand lane, it is not always in the exercise of due care to do so. Accordingly, the jury were instructed that it was not unlawful for Goosman to drive in the left-hand lane, but that they would have to consider whether driving there was a failure to exercise due care.

■■■ Request F was for an instruction that there was no legally sufficient evidence that Goosman's automobile was moving at an unlawful or excessive rate of speed.[5] The essence of this charge, it is believed, was granted. The jury were instructed that Goosman's right of way was not contingent upon nice calculations of time, speed, and distance; also, the court criticized Anderson's testimony which suggested that Goosman had been exceeding the speed limit.

■■■ Request J instructed the jury that the plaintiff was not contributorily negligent, as a matter of law, even if he were found to have been speeding.[6] Because of the other factors in the case bearing upon the issue of contributory negligence, the form of this request was clearly erroneous. Again, it is believed that the charge actually given with respect to speeding was both accurate and sufficient under the circumstances.

■■■ Request 2 instructed that the jury, in considering whether or not Anderson was in the exercise of due care, should take into account the size, weight, immobility, etc., of his tractor-trailer unit.[7] A charge of this nature was recently criticized by the Maryland Court of Appeals in Lemons v. Chicken Processors, 223 Md. 362, 164 A.2d 703 (1960), and the plaintiffs' prayer was denied for this reason. In its place, a very elaborate

4. Plaintiff's Request for Instructions "E"
"The Court instructs the jury as a matter of law that plaintiff, Frederick Z. Goosman, in operating the automobile in the left or inner lane of the lanes of U. S. Route No. 40 for eastbound traffic at and prior to the time of the collision was not violating the law; and it was not negligence on the part of the plaintiff to operate the automobile in the left or inner lane."

5. Plaintiff's Request for Instructions "F"
"The Court instructs the jury that there is no evidence in this case legally sufficient to prove that the automobile being operated by plaintiff, Frederick Z. Goosman, was proceeding at an excessive or unlawful rate of speed at or immediately prior to the time of the collision of vehicles mentioned in evidence."

6. Plaintiff's Request for Instructions "J"
"The Court instructs the jury that even if it believes that at the time of the collision of vehicles mentioned in evidence the automobile being operated by plaintiff, Frederick Z. Goosman, was proceeding at an excessive or unlawful rate of speed, nevertheless, there is no evidence legally sufficient to show that the operation of the automobile at such excessive or unlawful rate of speed by plaintiff was a proximate cause that contributed to the collision of vehicles."

7. Plaintiff's Request for Instructions No. 2
"The Court instructs the jury that in making its determination from the evidence as to whether, at the time of the collision of vehicles, the operator of the tractor and trailer combination, defendant Harry E. Anderson, exercised or failed to exercise such care and prudence as a reasonably prudent person would have exercised under like circumstances, the jury is to consider the factors of the size and weight of the tractor and trailer combination and that its operator, having knowledge of its width, length and weight, owed to other vehicles and persons on the public highway the duty to take those elements into consideration in the manner in which he operated the tractor and trailer combination; and the jury is further instructed that the fact that some vehicles are of a greater size or weight than the average vehicle gives them no additional rights on the public highways, and that reasonable care in the operation of such a ponderous and potentially dangerous machine as a tractor and trailer combination over a public highway requires that its operator shall at all times maintain a vigilant and careful watch to avoid injury to others in the lawful use of the highway, and that such operator shall at all times have his tractor and trailer combination under such control as will permit its safe use over the public highways under modern traffic conditions."

instruction was given on the meaning of due care, in which explicit reference was made to the length of the tractor-trailer unit. The substance of the law was presented, and counsel were free to add the trimmings in their arguments. In any event, the request proffered struck the court as misleading in its over-emphasis of the duty of care owed by Anderson.

■ Request 3 embodied an instruction of unnecessary length with regard to the burden of proving contributory negligence.[8] Its substance was included and perhaps more strongly stated in the charge actually given. The same may be said of Request 3A, with regard to which it might be mentioned additionally

that it was felt to be misleading on the requirement that the jury's verdict be unanimous.[9]

■ Request 4 dealt with the doctrines of emergency, a matter on which the court refused to instruct. Its inclusion was felt to be unwarranted by the evidence. The jury could have found, that Goosman had either plenty of time or no time in which to act. In either event, he took the only course of action that might have extricated him; the evidence was uncontroverted that, upon seeing the unit, he immediately applied his brakes and turned toward the right side of the road.

■ Requests 6 and 7 were almost identical.[10] Each instructed the jury to

8. Plaintiff's Request for Instructions No. 3
"The Court instructs the jury that in order to defeat a recovery by plaintiff, Frederick Z. Goosman, on the ground of contributory negligence on his part, defendants, A. Duie Pyle, Inc., Raymond A. Hill, Dennis R. Hill and Harry E. Anderson, must satisfy the jury by a preponderance of the evidence (1) that plaintiff, Frederick Z. Goosman, was guilty of negligence, and (2) that such negligence on the part of plaintiff directly contributed to produce his injuries; and in determining whether plaintiff, Frederick Z. Goosman, was guilty of such contributory negligence as would bar recovery in this case, the jury is further instructed that even if it finds from the evidence that plaintiff was guilty of some act of negligence, nevertheless such act of negligence on his part is not sufficient to defeat recovery in this case, but the burden is upon defendants further to show that such negligence of plaintiff was concurrent with the negligence of defendants, and was, moreover, the proximate and not the remote cause of the collision of vehicles."

9. Plaintiff's Request for Instructions No. 3A
"The Court instructs the jury that the burden of proof is upon defendants to establish by a preponderance of affirmative evidence that plaintiff, Frederick Z. Goosman, was guilty of contributory negligence which was the proximate cause of the collision, which means that if the minds of the jury are left by the evidence in a state of even balance as to the existence of contributory negligence, or if the jury is unable to determine from the

evidence whether or not plaintiff was guilty of contributory negligence, then the jury must find that plaintiff was not guilty of contributory negligence and must find its verdict in his favor."

10. Request No. 7 indicates the tenor of both Requests Nos. 6 and 7. Plaintiff's Request for Instructions No. 7
"The Court instructs the jury that if it finds from the evidence that at the time of the collision mentioned in evidence the tractor and trailer combination was being operated by defendant, Harry E. Anderson, out of a private road or drive and across the bed of U. S. Route No. 40 and into a crossover in the highway at that point, and that at that time plaintiff, Frederick Z. Goosman, was operating an automobile east on U. S. Route No. 40 approaching the place where the private road or drive intersected the highway, then the jury is instructed that it was the duty of defendant, Harry E. Anderson, not only to have stopped the tractor and trailer combination before entering U. S. Route No. 40 from the private road or drive but also to yield the right of way to all vehicles proceeding on U. S. Route No. 40 approaching the private road or drive, including the automobile being operated by plaintiff; and if the jury finds that defendant, Harry E. Anderson, did not fulfill his duties of both stopping the tractor and trailer combination before entering the highway and of yielding the right of way to the automobile being operated by plaintiff, and that the collision occurred at the place where the private road or drive intersected the highway, whereby plaintiff sustained injuries, then the verdict of the jury must be for plain-

return a verdict for the plaintiffs if it were found that Anderson violated section 234 of the Motor Vehicle Laws and that this violation was a proximate cause of the accident. However, both charges were erroneous, because of the absence of a proper qualification with regard to contributory negligence and for other reasons discussed above. These errors, it is hoped, were cured by the instructions of the court.

 Requests 8 through 11 all pertained to alleged violations by the defendants of Interstate Commerce Commission requirements regarding the placing and lighting of reflectors and lamps. The testimony—what little of it there was—claimed by the plaintiffs to warrant the giving of these charges was wholly incredible. The plaintiff, it is true, testified that he saw no lights on Anderson's unit. However, this is merely consistent with his further testimony that he saw no truck or that what he saw he did not recognize as a truck. The testimony of Goosman's passenger on this matter was only a trifle more convincing. Affirmatively, Anderson testified at some length about the lighting equipment on the tractor-trailer: headlights, rearlights, reflectors and lights along the sides of the trailer bed, lights on the cab, etc. He stated that these lights could be seen from a distance of no less than 500 feet. Not only were they on, both prior to the accident and immediately thereafter, but also Anderson had cleaned them with a rag shortly beforehand. Much of this evidence was corroborated by the investigating state troopers. Therefore, this set of requests was denied.

*Was it error to charge that Goosman could not "proceed on the boulevard with blind indifference"?*

 Such is the language of the cases, and the evidence with respect to visibility seemed to warrant its inclusion in the court's charge. See Greenfeld v. Hook, supra.

*Was it error for the court to refer to the boulevard as a "divided highway"?*

 The boulevard was referred to as a "divided highway" only once in the entire charge given by the court. The error of such a characterization is not perceived. Furthermore, even if it were error, it is still not understood how such a characterization could have been either misleading or prejudicial.

*Did the court's charge place excessive and prejudicial emphasis upon the issue of contributory negligence?*

 Contributory negligence was mentioned explicitly only nine times in a charge that ran to about twenty typewritten pages. On the other hand, primary negligence was mentioned no less than fifteen times. In almost every instance in which contributory negligence was discussed, its omission would have constituted an erroneous statement of law. Therefore, this ground would appear to be without merit.

One final comment should be made with respect to the matter of instructions. The day before the jury was charged in this case, counsel conferred with the court for several hours about the matter of its charge. Both sides had submitted requests, and they were discussed in detail. Also, counsel had the opportunity to examine the court's proposed instructions for more than twelve hours prior to their arguments (photostatic copies were made for that purpose). In short, counsel on both sides were given an ample opportunity to prepare for their arguments, so that they could give emphasis and clarification to those portions of the charge that were felt by them to be inadequate. The arguments to the jury were excellent, and for these arguments counsel are to be complimented and congratulated.

CONCLUSION

For all of the foregoing reasons, both the motion for a judgment n. o. v. and the motion for a new trial must be denied. Counsel for the defendant is to prepare and submit an order accordingly.

tiff, Frederick Z. Goosman, against defendants, A. Duie Pyle, Inc., Raymond A.

Hill, Dennis R. Hill and Harry E. Anderson."