Frederick Z. GOOSMAN, to his own use and to the use of Royal Indemnity Company, a body corporate, Appellant,

v.

A. DUIE PYLE, INC., a body corporate, Appellee.

No. 8762.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 16, 1963.

Decided June 29, 1963.

Melvin J. Sykes and Paul Berman, Baltimore, Md. (Paul M. Higinbothom, Baltimore, Md., Rose Rothenberg, New York City, and Sigmund Levin, Baltimore, Md., on brief), for appellant.

John F. King and Frank J. Vecella, Baltimore, Md. (Anderson, Barnes, Coe & King, Baltimore, Md., on brief), for appellee.

Before BOREMAN and BRYAN, Circuit Judges, and CRAVEN, District Judge.

BOREMAN, Circuit Judge.

Plaintiff-appellant, Frederick Z. Goosman, sustained personal injuries and property damage when his automobile collided with the rear of a 46-foot tractor-trailer rig leased by defendant-appellee, A. Duie Pyle, Inc. (Pyle or defendant herein), and operated by its agent, Anderson, as the rear of the trailer extended across the median strip and into the eastbound portion of four-lane U.S. Route 40. The accident occurred at a concrete crossover extending between eastbound and westbound portions of U.S. Route 40, about 950 feet east of the intersection of Route 40 and Maryland Route 152. Goosman appeals from a judgment on a jury verdict in favor of defendant Pyle entered by the United States District Court for the District of Maryland. Timely motions for directed verdicts in favor of Goosman on the issues of primary and contributory negligence were denied. The court denied also Goosman's motion for judgment n. o. v. or in the alternative for a new trial. To avoid needless repetition, the reader is referred to the opinion of the District Court, 206 F.Supp. 120 (D. Md.1962), which should be read in connection with this opinion.

On appeal Goosman charges: (1) The court erred in denying Goosman's motions for directed verdicts on the issues of Anderson's primary negligence and plaintiff's contributory negligence; (2) the court made numerous errors in its instructions to the jury; (3) the court erred in refusing to ask certain questions of the prospective jurors on their voir

dire examination; and (4) the court erred in refusing to order production of Anderson's written reports which were made to the owners and lessee of the tractor-trailer within a short time after the accident.

Under the evidence the jury could have found the following facts: At about 7:00 P.M. on the clear, dry night of December 9, 1959, with a passenger seated beside him, Goosman was driving his 1958 Chrysler Imperial in an easterly direction with its automatic throttle set at the maximum legal speed of 55 miles per hour when he suddenly observed the long flat-bed trailer of Pyle's rig blocking the left eastbound lane in which his car was traveling. There was no traffic in the right eastbound lane. He braked, swerved hard to his right to avoid collision but struck the rearmost part of the trailer with the left side of his Chrysler. At the moment of impact the tractor-trailer rig extended across the 26-foot median strip separating the eastbound and westbound lanes with its tractor extending into the southernmost (fast) westbound lane and its trailer projecting into the northernmost eastbound lane a distance of six to twelve feet.

Prior to the collision, according to his uncontradicted testimony, Anderson pulled into the Bonnie Brae Diner, a service station and truck stop on the south side of U.S. Route 40 opposite the crossover, to telephone his wife. Having completed his call, Anderson returned to his tractor-trailer, used a rag to wipe all the lights and reflectors on the rig, warmed up his tractor, and drove the rig to a stopped position perpendicular to U.S. Route 40 and south of the crossover intending to drive across the eastbound lanes and the median strip and to turn left into the westbound lanes. Here, Anderson testified, he carefully observed traffic conditions within his range of vision (see discussion in 206 F.Supp. at 123–124). Although he could see the traffic light at the intersection with Maryland Route 152 about 950 feet to his left, eastbound traffic between that intersection and a point about 600 feet to his left could not be seen because of a dip in the road. Neither eastbound traffic nor any reflection of lights was in Anderson's view to his left and, although two westbound cars were approaching in the short 300-foot sight distance to his right, he correctly estimated that they would pass before he could reach the westbound lanes. However, after Anderson had entered the highway, the sudden appearance of a third westbound car only 300 feet to his right forced him to stop his tractor on the crossover and in this position his trailer extended over 20 feet of the 24-foot total width of the two eastbound lanes. Anderson was on the lookout for eastbound vehicles and, upon observing the approach of Goosman's car from his left, he eased the tractor forward into the southerly westbound lane as far as possible without obstructing the way of the westbound car for which he had earlier stopped.

Goosman and his passenger testified that they saw no lights on the trailer, that the flat unloaded trailer bed, only seven inches thick, blended with the concrete pavement, and that they saw the trailer too late to avoid the collision. Maryland State Trooper Shockley elaborated on Goosman's testimony that the general illumination of the area was poor. But Anderson testified that the lighting in the area was good due to floodlights near the Bonnie Brae and the adjacent service station on the south of the highway and other floodlights around a garage on the north side directly opposite the crossover. Although Anderson failed to state directly and positively that he had turned on the trailer lights when leaving the diner, this fact could properly have been inferred from all the testimony. In addition, it was clear from the testimony of Pyle's witnesses that the trailer was equipped with adequate reflectors and lights which, if lighted, should have been visible to Goosman from a distance of about 500 feet as he advanced up and over the changing grade of the highway to the place of collision.

The Maryland statute applicable to the issue of whether Anderson

was guilty of primary negligence in entering U.S. Route 40 from a private drive is article 66½, section 234, Annotated Code of Maryland (1957):

"The operator of a vehicle entering a paved public highway, which is hereby defined to be a highway having a hard, smooth surface, composed of gravel, shells, crushed stone, paving blocks, asphalt, concrete or other similar substance, from an unpaved public highway, or from a private road or drive, shall come to a full stop upon reaching the intersection, and yield the right of way to all vehicles approaching on such paved public highway."

The quoted statute is to be applied and construed in the same manner as the Maryland "boulevard law," article 66½, sections 233 and 242, Annotated Code of Maryland (1957), under the many applicable decisions of the Maryland Court of Appeals. Zeamer v. Reeves, 225 Md. 526, 530–531, 171 A.2d 488 (1961); Shriner v. Mullhausen, 210 Md. 104, 114–115, 122 A.2d 570, 821 (1956). In these cases, which involve stop intersections as well as private entrances to the highway, the favored driver has the right of way on the through street and the unfavored driver is required by the boulevard law to stop and yield the right of way.

■ In support of his contentions that the negligence issues were not for the jury in this case, but should have been decided in his favor by the court as a matter of law, Goosman relies on his interpretation of Shriner v. Mullhausen, 210 Md. 104, 122 A.2d 570, 821 (1956). In that case the Maryland Court of Appeals, overturning a jury verdict, held the unfavored driver negligent as a matter of law where, from a private drive with an interrupted view of approaching traffic, he drove his 23-foot tractor-manure spreader rig onto a 21-foot public road without waiting a reasonable time to allow approaching traffic to traverse a "blind" spot, and the favored driver, reaching the crest of a hill without negligence, met the unanticipated emergency by braking, swerving left and losing control of her car. Although the favored driver could see the obstructing rig a distance of several hundred feet and could have stopped or passed to the right of the rig, the court held she had no last clear chance to avoid the accident and was free of contributory negligence as a matter of law. Based upon the holding in Shriner, Goosman appears to argue that under the Maryland law the unfavored driver about to enter a "boulevard" has a duty to stop and yield the right of way, even where the view of approaching traffic is so obstructed that no amount of waiting will remove doubts as to the approach of favored traffic. Goosman contends that since Anderson could not see a sufficient distance to his right, he was negligent in pulling onto the highway knowing that unseen westbound traffic could force him to remain in a position where he would be unable to yield the right of way to eastbound travelers such as Goosman. However, the Maryland cases, as we construe them, indicate that the duty placed on the unfavored driver is not so absolute as Goosman contends and, in addition, factual differences between Shriner and the instant case support submission of the negligence and contributory negligence issues to the jury.

In the leading case of Greenfeld v. Hook, 177 Md. 116, 8 A.2d 888, 136 A.L.R. 1485 (1939), where there was evidence that the favored driver could not be seen because he was driving at night without lights and it was clear that the favored driver was able to see the unfavored vehicle entering the intersection in time to stop or swerve to avoid the collision, the court held there was sufficient evidence to go to the jury on the theory that the unfavored driver exercised due care in entering the intersection and that the favored driver had a last clear chance to avoid the collision. The court explained that a favored driver has the right to assume an unfavored driver will observe the duty imposed on him by the statutes to stop and yield the right of way before entering a favored high-

way, but this rule does not mean the favored driver has an absolute, unqualified and complete right of way under all circumstances. The favored driver also has the duty to exercise reasonable care to avoid injuring an unfavored driver wherever he knows or should know his progress will endanger the unfavored driver. The court illustrated with the following statement:

" * * * There are many situations in which the driver of an automobile entering a favored from an unfavored highway may without negligence be endangered by traffic over and along the same; dense fog may make it impossible for him to discover approaching cars, a child unexpectedly coming into the highway may cause him to stop or to go on, or some defect in the motor, the brakes, or the steering gear of his automobile may prevent his controlling it, or curves or *grades may prevent him from seeing approaching traffic.*" 177 Md. at 130, 8 A.2d at 894 (Emphasis supplied).

The Maryland Court of Appeals has ruled that the issue of the favored driver's negligence was for the jury in several cases where there was evidence to support a finding of such negligence. See Sun Cab Co. v. Hall, 199 Md. 461, 86 A.2d 914 (1952); Harper v. Higgs, 225 Md. 24, 169 A.2d 661 (1961); and Green v. Zile, 225 Md. 339, 170 A.2d 753 (1961). In Harper v. Higgs, supra, the court held that the jury could find the unfavored driver free of negligence on the theory of an unforeseeable intervening cause where there was evidence she had entered the highway without negligence but her car stalled while in the intersection.

An examination of the evidence and the instructions given by the trial court shows that the jury could properly have rendered a general verdict for Pyle based on any of the following findings: (1) That Anderson, after entering the roadway without negligence, was prevented from completing his turn onto the highway by an independent intervening cause, the approach of an additional westbound car, and that Anderson did not breach any duty of care owed to Goosman; (2) that Goosman had an opportunity to avoid the accident in the exercise of normal care and that his negligence in failing to do so was the sole proximate cause of the collision, or (3) that Anderson was guilty of negligence in entering the highway and/or in failing to yield the right of way to Goosman, but that the negligence of Goosman was also a proximate cause of the accident and defeated recovery. We are not persuaded that the evidence so clearly favored plaintiff Goosman that all reasonable men must resolve in his favor the issues of negligence and contributory negligence. Therefore, the District Court properly submitted these issues to the jury and properly denied Goosman's motions for directed verdicts and for judgment n. o. v. See McClure v. Price, 300 F.2d 538, 544 (4th Cir. 1962); Burcham v. J. P. Stevens & Co., 209 F.2d 35, 38 (4th Cir. 1954). Similarly, under the evidence and instructions we cannot say that the verdict of the jury was clearly against the weight of the evidence.

In this court Goosman raises the same questions as to the correctness of the trial court's instructions to the jury as he raised below. A careful study of the court's charge satisfies us that in the context of the factual evidence all the essential points of law were fairly presented to the jury. Our view of the law of the case corresponds to that of the District Court and Goosman has shown no resulting prejudice. The court's excellent reasons for wording the charge as it did are set forth in its opinion, 206 F.Supp. at 129–132.

As one of his arguments Goosman claims it was reversible error for the trial court to refuse to ask four questions of the prospective jurors on their voir dire. The general rule recognized by both federal and Maryland courts is that the trial court has wide discretion in determining what questions should be asked on voir dire examination of jurors and the exercise of such discretion will not be disturbed on appeal in the absence

**50**

of a clear showing of abuse.[1] We find nothing in the record indicating an abuse of discretion or any prejudice to appellant Goosman by the refusal to ask the proffered questions.

We now come to Goosman's contention that the District Court erred in refusing to grant his motion under Rule 34, Federal Rules of Civil Procedure[2] for production of the written reports to the owners and lessee of the tractor-trailer made by Anderson soon after the accident. In his motion Goosman alleged that the following facts showed good cause therefor: The accident occurred December 9, 1959; Anderson, operator of the tractor-trailer, was a witness and made separate written statements to the owners and lessee within a very short time after the collision; the one to defendant Pyle was dated December 18, 1959; for many weeks Goosman was prevented by confinement and hospitalization, due to his injuries, from investigating and engaging counsel to investigate his case to discover witnesses who might have a fresh recollection of the cause and circumstances of the collision; Goosman's counsel contemplated making Anderson a party defendant and deemed it improper and unethical to interview him; at the taking of Anderson's oral deposition January 24, 1962, upon being asked if there were any factual variances or discrepancies between the prior written statements and his statements on deposition, Anderson was advised by counsel not to answer those questions; Anderson was employed by the defend-

ants to whom report was made; the statements were relevant, not privileged; they were in the custody of defendants' counsel and unavailable to Goosman. In his statement of grounds in support of the motion, Goosman also stated he was released from confinement in Lennox Hill Hospital, New York, on March 11, 1960, and engaged Maryland counsel on March 15, 1960.

In the recent case of Guilford Nat. Bank of Greensboro v. Southern Ry., 297 F.2d 921 (4th Cir. 1962), it was held that Rule 34 requires a specific showing of good cause in addition to showing the relevancy, materiality and unavailability of the document to the movant. Speaking through Chief Judge Soboloff, this court recognized the special value of contemporaneous statements; 297 F.2d at 926:

"* * * It is argued that since it is unlikely that the witnesses, when questioned at a later date, would be able to recapture their immediate perceptions of and reactions to the accident, their written statements, in addition to being extremely valuable to counsel, are irreplaceable. Indeed, it appears that the courts are unanimous in holding that a showing that the statements were made at the time of the accident satisfies the good cause requirement of Rule 34. See Reynolds v. United States, 192 F.2d 987, 991–992 (3d Cir. 1951), rev'd on other grounds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); People of

---

1. Alverez v. United States, 282 F.2d 435, 437 (9th Cir. 1960); Yarborough v. United States, 230 F.2d 56, 63 (4th Cir. 1956), cert. denied, 351 U.S. 969, 76 S.Ct. 1034, 100 L.Ed. 1487; Butler v. United States, 191 F.2d 433, 435 (4th Cir. 1951); Casey v. Roman Catholic Archbishop, 217 Md. 595, 605, 143 A.2d 627, 72 A.L.R.2d 893 (1958); Bryant v. State, 207 Md. 565, 583, 115 A.2d 502 (1955). See also Rule 24(a), Fed.R. Crim.P., 18 U.S.C.; and Connors v. United States, 158 U.S. 408, 413, 15 S. Ct. 951, 39 L.Ed. 1033 (1895) (applying same rule to both civil and criminal cases).

2. In pertinent part Rule 34 is as follows: "Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 30(b), the court in which an action is pending may (1) order any party to produce and permit the inspection and copying * * *, by or on behalf of the moving party, of any designated documents * * *, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) and which are in his possession, custody, or control; * * *."

State of California v. United States, 27 F.R.D. 261 (N.D.Calif.1961); Brown v. New York, N. H. & H. R. R., 17 F.R.D. 324 (S.D.N.Y.1955); 4 Moore, Federal Practice § 34.08, at 2452 (2d ed. 1950); Annot., 73 A.L.R.2d 12, 70–73 (1960); cf. New York Cent. R. R. v. Carr, 251 F.2d 433, 435 (4th Cir. 1957). Nevertheless, in all the above cited cases, not only were the witnesses' statements approximately contemporaneous with the accident, but opposing counsel had no opportunity to question the witnesses until weeks or months later, if he could question them at all."

The Guilford case was distinguished on its facts because there plaintiff's counsel had interviewed the witnesses between six and nine days after the accident and, in the absence of circumstances indicating a distinct and irremediable disadvantage to the moving party, the information thus obtained was deemed as reliable as that obtained by the defendant on the day following the accident. Goosman's situation, however, fits the general rule enunciated in the prior cases rather than the exception illustrated by the facts in Guilford. Goosman and his attorneys were not only prevented from taking Anderson's statement for at least four months but, under the facts of this case, Goosman may have sustained a disadvantage affecting the fundamental issues of liability.

Although Goosman's counsel were advised of Anderson's report of December 18, 1959, through defendant's answers to interrogatories filed on June 20, 1961, the need for an examination of such documents first became apparent only when Anderson refused, at the direction of defense counsel, to state whether or not the prior written statements of facts agreed with the facts stated in his deposition. The exchange on that occasion gave Goosman's counsel ample reason to suspect that the written reports were not consistent with Anderson's later description of the collision.[3]

3. The pertinent part of the deposition of Harry E. Anderson taken January 24, 1962, is as follows:

"Q. [Examination by Mr. Levin, attorney for Goosman] When did you first report the accident to anybody other than the form you say you filled out at the barracks [for the Commissioner of Motor Vehicles]?

"A. I immediately reported it to my boss which was Hill, the Hill Brothers, I was working for. I immediately, like I say, I could not get in touch with him because he was in a meeting in Baltimore somewhere, I can't recall where it was any more but he was in Baltimore at a meeting but I did contact his wife, that's Raymond Hill's wife.

"Q. When was that?

"A. Oh, within a half hour after the accident, just as soon as things were cleared up where I could—

"Q. You told her about the accident?

"A. Yes, sir.

"Q. Did you make any report after that to either of the Messrs. Hill about the accident or tell them about it?

"A. The next morning I met Raymond Hill which is one of the brothers, the next morning, I met him at Bel Air.

\*      \*      \*      \*      \*

"Q. Did you make any other statements to any representatives of either the Messrs. Hills or the Pyle Company after that in relation to this accident?

"A. Yes, sir, it was reported to A. Duie Pyle.

"Q. By whom, by you?

"A. Yes, sir.

"Q. You made a statement to a representative of A. Duie Pyle?

"A. Yes, sir.

"Q. Did you tell him how the accident took place?

"A. Yes, sir, we explained it on paper which we have a regular form, accident forms that the company has in case you have an accident which we carry in our trucks at all time.

"Q. Did you make the same kind of a report to a representative of the Messrs. Hill that you made to the representative of the Pyle Company?

"A. Yes, sir.

"Q. So, you made two different statements or two separate statements?

"A. Two separate statements, not different statements.

"Q. Is there anything you told these representatives in the statements you haven't testified to today?

"MR. HOWARD [representing Mr. Anderson]: I object to that.

Counsel for defendants knew the contents of the written reports and instructed Anderson not to answer. The possibility of a discrepancy between these reports and Anderson's deposition (and, in substance, his later testimony at trial) becomes especially significant in this case where statements of the sole witness familiar with the entire sequence of events are involved. Anderson alone knew the details of his actions in driving the tractor-trailer prior to the collision. Thus, the written reports were needed not only to test Anderson's credibility, but to ascertain the facts from which liability might be determined. Disclosure of any of the following facts could well have resulted in a verdict for Goosman: (1) Anderson failed to turn on the trailer lights before driving onto the highway; (2) Anderson saw Goosman's car approaching in the eastbound lane but mistakenly thought he could make his turn before Goosman reached him; (3) Anderson did not stop or look for approaching traffic before entering the highway and the accident occurred in his initial entering movement; (4) Anderson did not see or anticipate the approach of the third westbound car until he had moved onto the highway and, to avoid a collision with the westbound car, he backed the tractor-trailer into Goosman's path; (5) there was no westbound traffic at all. Even lesser discrepancies could have influenced the jury to find Anderson negligent or Goosman free of negligence. The state-

ment of factual details available in the contemporaneous written reports was essential to a proper evaluation of the liability in this case.

■ In opposing the motion for production, defense counsel contended these reports were privileged as the "work product" of defendants' attorneys and privileged because required by rules of the Interstate Commerce Commission. But the written statements of Anderson to his immediate employers, the Hills, and to the lessee, Pyle, the carrier then using his services, were made pursuant to ICC regulations 49 C.F.R. § 192.40(e), authorized by 49 U.S.C. § 304. These reports are not privileged under 49 C.F.R. §§ 194.1–194.12 pertaining to reports from carriers to the Interstate Commerce Commission. They were made in the ordinary course of business under ICC regulations and do not represent the lawyer's work product within the holding in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). See United States v. Swift & Co., 24 F.R.D. 280, 282 (N.D.Ill.1959), aff'd, 367 U.S. 909, 81 S.Ct. 1918, 6 L.Ed.2d 1249; Morrone v. Southern Pac. Co., 7 F.R.D. 214 (S.D.Calif.1947); 4 Moore, Federal Practice, para. 26.23 [8.-1], at 1387 (2d ed. 1962 repl.).

■ Defendant Pyle also challenged Goosman's motion for production because of failure to specifically identify the documents sought to be produced and because the facts urged as constituting good cause were not supported by

"Q. About the accident and how it occurred?

"MR. HOWARD: I object to that.

"MR. LEVIN: May he answer the question?

"MR. KING [representing A. Duie Pyle, Inc.]: I object to it, too, of course.

"MR. LEVIN: Are you instructing him not to answer?

"MR. KING: He's not mine, he's Mr. Howard's.

"MR. LEVIN: Mr. Howard.

"MR. HOWARD: Yes, I am, don't answer that, Mr. Anderson.

"Q. Is there anything you testified to here today about the happening of this accident that you didn't tell either of those representatives?

"MR. HOWARD: I object to that and instruct him not to answer that question.

"MR. LEVIN: Well, I call on you two gentlemen to produce the statement that this man made and ask you whether you want to let him read the statement so he'll know. All I'm trying to do is find out the facts.

"MR. HOWARD: I'll consider your request that we produce.

"MR. KING: I'll do the same."

affidavit. The motion demanded production of the following writings:

"All written statements, and oral statements reduced to writing, made or given by defendant, Harry E. Anderson, to defendants, A. Duie Pyle, Inc., Raymond A. Hill and Dennis R. Hill, or their representatives, concerning the collision on December 9, 1959."

The statement of December 18, 1959, admittedly in the custody of Pyle's counsel, was specifically identified in the motion as hereinbefore shown. Thus, to the extent of the available information, the motion was specific as to the documents being sought. When counsel for defendants acknowledged possession of certain statements at the hearing on the motion, it was clear the documents were sufficiently identified.

In presenting its contention that an affidavit was required to support the motion for production of documents under Rule 34, the defense cited numerous authorities. However, although it is generally agreed that the better practice under Rule 34 is to support, by affidavit, the statement of facts necessary to a showing of good cause, under some circumstances such an affidavit is not indispensable. Professor Moore states that Rules 7(b) and 11 of the Federal Rules of Civil Procedure do not require that facts alleged in a motion and not otherwise appearing of record must be sworn to or contained in an affidavit and cites several cases where lack of an affidavit was not fatal.[4] In any event, the facts of this case would not command a ruling that an affidavit was required. At the time of the motion almost all of the facts alleged therein to show good cause were properly before the court in the filed interrogatories, depositions and stipulations. One alleged fact which was not part of the record was that Maryland counsel were not engaged by Goosman until March 15, 1960, four days after his release from a New York hospital. At the hearing

on the motion, counsel for Goosman offered to confirm this fact and it is obvious that he was competent to verify the date when he was retained. At the hearing counsel also elaborated on his belief, set forth in the motion under Rule 34, that because Anderson was a potential party defendant legal ethics required that he could not be interviewed by Goosman's counsel prior to the commencement of the action. Since Anderson was actually made a party defendant, continued to be a defendant at the time of the hearing on the motion under Rule 34, and remained a party until his dismissal at the close of all the evidence, there is no reason to question counsel's good faith in taking this position. Although neither of these facts was essential to a finding of good cause and a granting of the motion for production of the documents sought in this case, counsel could properly explain both matters to the court. Under the circumstances, the essential facts relied upon in support of the motion for production of documents were properly before the District Court and no affidavit was required.

The showing of good cause made by Goosman in support of his motion for production of documents was sufficient to satisfy the requirements of Rule 34. Under the circumstances of this case, where the factual information contained in the documents sought could have a significant effect on the outcome of the trial, denial of the motion was "improvident and affected substantial rights." See Tiedman v. American Pigment Corp., 253 F.2d 803, 808 (4th Cir. 1958). Therefore, we are convinced that the denial of the motion by the trial court was an abuse of discretion.

We note that whether or not Goosman is entitled to a new trial depends upon the contents of the written reports made by Anderson to defendant Pyle and the owners of the tractor-trailer. If the reports are factually consistent with Anderson's testimony at the trial, and in deposition, no new light will

---

4. 4 Moore, Federal Practice, para. 34.07, at 2442–43, n. 6 (2d ed. 1950, Supp. 1962).

be shed on the questions of negligence and contributory negligence. However, if there are discrepancies between the written reports and Anderson's testimony which could materially affect the determination of the issue of liability, Goosman is entitled to a new trial. Accordingly, we remand the case to the District Court with instructions that production of the desired documents for inspection by court and plaintiff's counsel be compelled in order to ascertain whether any significant discrepancies exist which would warrant a new trial. If no such discrepancies are apparent, a judgment in favor of Pyle should again be entered. Costs on appeal will be taxed to defendant.

Remanded with instructions.